618

GOLLON, Appellant, vs. JACKSON MILLING COMPANY and another, Respondents.

*April 7—April 27, 1937.*

*W. E. Atwell* of Stevens Point, for the appellant.

For the respondents there was a brief by *Goggins, Brazeau & Graves* of Wisconsin Rapids, and oral argument by *Theo. W. Brazeau.*

FRITZ, J. The question on this appeal is whether plaintiff's action for reformation of a deed delivered by him in 1917 to the Jackson Milling Company was barred under the statute of limitations within six years after the perpetration of the fraud alleged by plaintiff as the basis for his right to reformation. The fraud charged was that by their misrepresentations the grantees' agents obtained from the plaintiff and his·wife, on October 29, 1917, a deed granting the right of unlimited flowage of his land instead of merely the limited right which he intended and believed that he was granting. He alleged that the $1,700, which he received for the deed, represented fair consideration for the rights ·which he in-

tended to grant, but that the value of the full flowage rights was in excess of $3,700; that the defendants asserted no further rights under the deed than their agents had represented it to convey, until, in 1930, they constructed and operated a dam which backed up water three and one-half feet above the height carried for ten years prior thereto; and that until then he had not learned of the effect of the deed nor of the fraud which had been perpetrated upon him.

The learned circuit judge sustained the defendants' demurrer to the complaint on the ground that, "immediately upon the consummation of the alleged fraud in the year 1917, plaintiff had a right of action for damages occasioned by such fraud and that this right of action became barred at the expiration of six years, under sec. 330.19, Stats., formerly sec. 4222, Stats., or under sec. 330.18 (3), Stats., and that the barring of this cause of action barred all rights of action based upon such right." As the court said in that connection, "if prior to the amendment of sec. 330.19 (7) in 1929 the plaintiff's right of action, arising out of the alleged fraud upon him, gave the right to an immediate action for damages, as well as a right to invoke the aid of a court of equity to set aside or reform the deed, the right of action for damages might have been prosecuted and such right of action would be barred by the statute whether the fraud was discovered immediately or at some later time. It is well settled in Wisconsin that if a fraud gives the right to the aggrieved party to either sue for damages, or bring an action in equity, based upon the same facts, and the right to sue for damages becomes barred by the six-year statute of limitations, that also bars the right of action in equity at the same time; and that the action for damages becomes barred at the end of six years notwithstanding the facts constituting the fraud are not discovered until after that time." For the reasons stated in *Thom v. Sensenbrenner,* 211 Wis. 208, 247 N. W. 870, if the plaintiff had a right of action in October, 1917, to re-

cover damages for the fraud then perpetrated on him, so that his cause of action therefor accrued on that day, then all rights of action based on that fraud became barred by reason of secs. 4219 and 4222, Stats. 1917–1923, upon the expiration of six years after October, 1917; and the amendment of sub. (7) of sec. 330.19, Stats., by ch. 24, Laws of 1929, is not applicable to any of those rights of action. Consequently, all possible causes of action, whether in equity or at law, based on the alleged fraud became barred six years after October 29, 1917, if the plaintiff was then entitled to bring an action at law for deceit for damage to him by reason of the grantee then fraudulently acquiring under the deed more valuable flowage rights than the plaintiff intended to grant in consideration of but $1,700.

Plaintiff contends that this action is not barred because he had no right of action for deceit until he affirmed the contract or grant embodied in the deed, and he cannot be deemed to have done that until he discovered the fraud; and he also contends that no such cause of action existed until the defendants flooded all his lands in 1930, because the damages resulting from the fraud had not come into existence and it was impracticable to arrive at the amount thereof, which might result from the fraud.

Although it is true that damages are an essential element to a cause of action for fraud (*Foster v. Taggart,* 54 Wis. 391, 11 N. W. 793; *Barber v. Kilbourn,* 16 Wis. *485; *Doherty v. Wing,* 140 Wis. 227, 122 N. W. 716), that rule is not decisive of the questions raised herein. In *Jacobs v. Frederick,* 81 Wis. 254, 255, 51 N. W. 320, and *Stahl v. Broeckert,* 170 Wis. 627, 629, 176 N. W. 66, this court applied the general rule that "where the statutes do not otherwise provide, a right of action at law to recover damages for a fraud accrues and the statute begins to run when the fraud is successfully consummated, not when it is discovered. . . ." 25 Cyc. 1181; 37 C. J. p. 935, § 303. In *Jacobs v. Frederick,*

*supra*, sales of stock in 1883 were induced by false and fraudulent representations, the falsity of which was not discovered by plaintiff until 1887. In discussing when the right of action accrued, the court said :

"The simple question, then, is whether it accrued at the time the fraud was successfully perpetrated in October, 1883, or when it was discovered in 1887. It accrued when the right to commence it was complete. That right was complete as soon as the fraud was perpetrated and the money paid."

In *Stahl v. Broeckert, supra,* the plaintiff, when executing a note and mortgage on the purchase of property, was fraudulently induced by one of the defendants to sign another note which she had not agreed to give. Although she had no knowledge of the fraud and no actual loss as the result thereof until four years after the perpetration thereof when she was compelled to pay the note to an innocent holder, this court said, in an action for deceit brought within six years after she made that payment :

"Such being its nature, the cause of action accrued when the fraud was perpetrated and not when it was discovered by plaintiff, and the statute of limitations had run thereon long before this action was commenced."

In the case at bar the plaintiff, in connection with contending that no right of action for deceit existed upon the perpetration of the fraud by obtaining his deed in 1917, claims that he sustained no damage until the defendants flooded his land in 1930 in excess of the grant which he intended to make by his deed; and that his sole remedy if he had affirmed the contract would have been by condemnation, which he could not have maintained until there was a taking of his land in excess of the grant intended by him. Those contentions cannot be upheld because the sustaining of some damage by the plaintiff in consequence of the fraud was not dependent upon

or delayed until his land was actually flooded in excess of his intended grant so as to entitle him to recover therefor in condemnation proceedings, and thus constitute the latter his sole remedy. If the unlimited grant in the deed was obtained by fraud in 1917, he was then subjected to damage because the grantee thereby and then fraudulently acquired from him greater rights in his land than he intended to convey and was being compensated for. Immediately upon the delivery of that deed, there vested thereunder in the grantee the right to unlimited flowage of the land until there was some subsequent limitation of that grant by either reformation of the deed or some other equally effective limitation of the grant. Until that was done, the value of the rights which were retained by the plaintiff in the land was impaired and diminished to the full extent of that unlimited right. As long as that unlimited right of flowage continued to be in the grantee, there would be no trespass or unlawful taking of plaintiff's land by the actual flooding of the land in excess of the limited right of flowage, which he claims it was but his intention to grant; and, consequently, plaintiff could not recover damages therefor in condemnation proceedings.

Because fraudulently inducing a person to enter into a contract under such circumstances is considered to work such immediate legal injury as will support an action, the principle that the statute of limitations runs from the perpetration of the fraud is not to be varied by the fact that a person so induced may not suffer the actual consequential damages until sometime subsequent to the making of the contract induced by the fraud. 37 C. J. p. 936, § 304. So, although the defrauded plaintiff in *Stahl v. Broeckert, supra,* did not actually suffer consequential damages until four years after the perpetration of the fraud, the statute of limitations was held, nevertheless, to run from the time of such perpetration, because it was then that the right of action accrued.

In *Griffin v. Lumber Co.* 140 N. C. 514, 53 S. E. 307, 6 L. R. A. (N. S.) 463, the plaintiff sued to recover damages for deceit on the ground that the defendant's agent, in securing a deed from the plaintiff conveying timber on his land, falsely represented that it reserved to him a certain class of trees. Plaintiff commenced the action before any of the reserved timber was taken (although it was subsequently removed). In respect to the time of the accrual of the action for deceit, the court said:

"It would seem clear, both upon reason and authority, that by this conduct a right of action accrued to plaintiffs. If the matter had remained in this condition plaintiffs could have brought an action in the nature of a bill in equity for correction of the deed, or sued, as in trespass on the case, for deceit. . . .

"We think it clear that the plaintiffs, upon the facts testified to by them, had a cause of action for the fraud practised by defendant's agent. This right is not dependent upon the removal of the timber."

In *Wilson v. Ivy*, 32 Miss. 233, 235, Ivy was induced to purchase a slave from a creditor of Wilson, on advice of the latter, who knew that the creditor's title was defective, but did not disclose that fact to Ivy. Subsequently Ivy lost the slave because of the defective title. On the trial of this action, in which Ivy sought to recover damages from Wilson, the court instructed, in effect, that the statute of limitations ran from the time of the judgment against Ivy for the recovery of the slave, and not from the time that he was induced to purchase by Wilson's deceit. In passing upon that instruction the appellate court said:

"The general rule is, that the statute commences running from the time of the commission of the fraud, and not from the time when the injury occasioned by it to the plaintiff was established. . . . But the deceit was as complete on the day on which the plaintiff made the purchase, in consequence of

it, as it was when he lost the slave by the superior title of the party who recovered judgment in Tennessee; and the bar was complete after the lapse of three years from the date of the deceit."

In *Northrop v. Hill*, 57 N. Y. 351, 353, a fraudulent representation was made to the plaintiff that there was no other incumbrance than a certain mortgage, when in fact there was also a prior mortgage. However, no loss was actually incurred by the plaintiff, who was induced to purchase by the misrepresentation until, after several years, the first mortgage was foreclosed, and he became liable on his warrant of title in his conveyance to another party. In respect to the time of the accrual of plaintiff's right of action to recover damages for the deceit, the court said:

"Did the statute of limitations begin to run from the time of the fraudulent representations as to the condition of the land and the plaintiff's purchase upon the faith of them, or does it begin to run from the time of the subsequent eviction, or from the payment of damages on the covenant of warranty? This question resolves itself into the inquiry whether the plaintiff had, at the time when the fraudulent representations were made, and when he acted upon them, an action for damages in such a sense that the entire cause of action accrued at that time. If the subsequent damages developed a new cause of action the statute has not barred his claim. On the other hand, if the original wrong contained within itself the complete cause of action, and the resulting loss was merely an aggravation of damages, the claim was barred by the statute in 1869, when this action was brought."

So in the case at bar, the plaintiff's right to recover damages for the deceit was complete and his cause of action therefor accrued immediately upon the perpetration of the fraud by obtaining plaintiff's grant of greater flowage rights than he had agreed to convey for the consideration which was then paid to him. The fact that it would have been difficult then to compute the actual amount of plaintiff's damages does not

militate against such immediate accrual of the cause of action. "Cases are not dismissed nor are judgments reversed merely because of difficulty in fixing accurately the amount of the damages." *Rogers v. Rosenfeld,* 158 Wis. 285, 291, 149 N. W. 33. There would have been no more difficulty in determining the value of the unlimited flowage rights in 1917, than there was in then determining the value of the limited right which the parties valued at $1,700; and if they had then desired to contract for such unlimited rights, they could have arrived at the probable value thereof, regardless of the height at which the railroad commission then or thereafter authorized the grantee to maintain its dam.

In relation to the rule as to the damages sustained by a grantor from whom a conveyance of land was fraudulently procured by representing to him that he had but a life estate, when he actually owned in fee simple, the court said in *Hicks v. Deemer,* 187 Ill. 164, 170, 58 N. E. 252:

"The extent of his injury was the difference between the value of the actual title which he conveyed and the value of the title which the defendants represented to exist and which he was led to believe he did convey."

That is in accord with the following rule as to the damages sustained by a vendor who was induced to sell corporate stock by misrepresentations regarding its value, to wit: The damages "are limited to the difference between the real value of the subject of the sale at the time of such sale and what the value would have been had the representations been true, with interest in a proper case." *Potter v. Necedah Lumber Co.* 105 Wis. 25, 32, 80 N. W. 88, 81 N. W. 118. So in the case at bar, the damage which the plaintiff was entitled to recover in 1917, upon the perpetration of the alleged fraud, was the difference between the value of the unlimited right of flowage, which he actually granted by his deed, and the value of the limited right, which the grantee falsely repre-

sented and led the plaintiff to believe that he was granting thereby; and a determination in 1917 of those values and the resulting difference was not so difficult that it could not be made to the reasonable certainty required in assessing damages in civil actions.

*By the Court.*—Order affirmed.