SCIANO, Respondent, vs. HENGLE and wife, Appellants.

*May 10—June 4, 1957.*

For the appellants there were briefs and oral argument by *John J. Tyson, Jr.,* attorney, and *James G. Sisolak* of counsel, both of Milwaukee.

For the respondent there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Roger S. Bessey* of counsel, all of Milwaukee, and oral argument by *Mr. Bessey.*

FAIRCHILD, J.   The defendants do not attack the findings that the representation was made as found by the jury, at least as to the goods in the basement; that the stock was largely unsalable; that defendants knew the representation was false; and that the defendants made the representation with intent to defraud the plaintiff. The defendants do claim that there is no credible evidence to support other findings.

Defendants assert that as a matter of law, plaintiff, in the exercise of ordinary care, should have discovered the falsity of the representation. The circuit court considered that the evidence presented a jury question and we agree. The jury could properly have found that except for a few bloated cans which plaintiff did find upstairs and which were excluded

from the inventory, the upstairs merchandise which he later discovered to be old and unsalable was obscured from view by merchandise in good condition; that Sciano had confidence in Hengle because of the broker's assurances about his honesty; and that Sciano was thrown off guard by Hengle's act against his own interest in putting a reduced price on ten cases of goods in the basement because of their condition. Sciano would be entitled to consider that the store had been in constant operation, that he had requested Hengle to sell out as much of his stock as possible, and that the presence of a large quantity of old and unsalable merchandise was improbable in a stock that was turning over. Almost all the goods in the basement were in cases. The jury observed Sciano at the trial and could gauge his intelligence and keenness.

It is not easy to reconcile the results in all the decided cases involving the right of one alleging fraud to rely upon a representation. Defendants cite cases where jury or trial court findings of a right to rely have been upset. *Prime Mfg. Co. v. Allen-Hough C. Co.* (1933), 210 Wis. 72, 245 N. W. 70: Buyer's representatives had been associated with the seller's business and were in as good or better position to know the true situation. *Acme Chair & M. C. Co. v. Northern C. Co.* (1932), 209 Wis. 8, 243 N. W. 415, 244 N. W. 582: Defendant claimed reliance on an oral representation that a patent had been issued but failed to ask to see evidence of its issuance. *Plantikow v. Wolk* (1926), 190 Wis. 218, 208 N. W. 922: One who accepted a note of a third party claimed to rely on a representation that the note was good, but failed to use his opportunities to inquire concerning the financial resources of the makers. This court concluded that in the situation disclosed by each of these records, the one alleging fraud was not entitled to rely upon the representation but these decisions do not help us to determine whether the issue is for the jury under different facts.

In *Jacobsen v. Whitely* (1909), 138 Wis. 434, 436, 120 N. W. 285, a number of earlier decisions were examined and the rule was stated: "The rule of law is well established that a purchaser is not justified in relying upon the statements of the seller when their falsity is obvious to him, but this does not require that he shall meet every positive statement with incredulity and must search to ascertain whether it is false. The law recognizes the duty of each to refrain from even attempted deceit of another with whom he deals, and the right of the latter to assume that he will do so. It is an unsavory defense for a man who by false statements induces another to act to assert that if the latter had disbelieved him he would not have been injured. . . . Nevertheless courts will refuse to act for the relief of one claiming to have been misled by another's statements who blindly acts in disregard of knowledge of their falsity or with such opportunity that by the exercise of ordinary observation, not necessarily by search, he would have known. He may not close his eyes to what is obviously discoverable by him. . . . It is in this sense only that opportunity to know the truth will prevent recovery for deceit. Whether the situation presents or fails to present such opportunity is usually a question of fact. The intelligence or acuteness of plaintiff is one important element. . . . Another, is the reliance reposed by the buyer on the seller by reason of acquaintance or confidence. These and many other considerations have proper effect in deciding whether the truth was obvious, as appears in the various cases already cited and very many others."

In *Jesse v. Tinkham* (1932), 207 Wis. 49, 53, 239 N. W. 455, it was said, "Whether plaintiff was warranted in accepting that representation as a statement of fact, whether he relied upon any of the representations or was induced thereby to purchase, and whether he would, in the exercise of ordinary care, have discovered the falsity of the representa-

tion, were all issues which were to be determined in the light of plaintiff's intelligence and experience."

We do not consider the condition of the goods in this case so obvious nor plaintiff so heedless as to require determining as a matter of law that he had no right to rely upon the representation made by Hengle.

Defendants next assert that there was no credible evidence that plaintiff relied on defendants' misrepresentation. The representation was made at a critical point in the process of taking inventory of the stock in trade. Plaintiff had raised a question as to the goods in the basement. Fairly construed, his question suggested a doubt that they ought to be counted as part of the stock. The purpose of the inventory was to determine how much Sciano was to pay. Hengle's answer evidently resolved Sciano's doubt for he proceeded with the inventory as though Hengle's statement were correct. He raised no further question and made no detailed inspection. From these facts the jury could find that he relied on the representation.

Defendants point out that Hengle's oral representation that, "All this stuff is good merchandise" was made in the basement during the course of the inventory of the basement. Defendants claim that therefore the jury could not properly find that there was a representation that the whole stock was good, wholesome, and salable. They also assert that damages would have to be limited to the goods in the basement.

While it is true that the oral statement referred to was made in the basement, that inventory was taken the day before the inventory upstairs. It was the alleged practice of the defendants to replenish the store shelves from basement inventory. Under the circumstances of this transaction the inclusion of any goods in the inventory was virtually a representation that they were good, wholesome, and salable since the inventory was being taken for the purpose of determining the quantity and cost of stock held for sale. The jury could

properly have found that old and unsalable merchandise had deliberately been placed at the rear of the upstairs shelves, behind fresh merchandise, for the purpose of making plaintiff believe that all the goods were salable. Under the circumstances the jury could properly find that the representation went to the condition of all the canned goods whether located in the basement or upstairs. Considering the entire stock it is apparent that if the jury believed plaintiff's evidence as to the amount of canned goods on hand and the percentage which was unsalable, it made sustainable findings on the subject of damages.

Finally the defendants assert that under the Sales Act, property in the goods passed to Sciano in early February when the contract was made and representations made on March 19th could not have induced him to purchase. Whether property could be said to have passed in February subject to changes in the amount of stock, it is a reasonable interpretation of the contract that the stock in trade for which Sciano was obligated to pay inventory cost was that stock on hand which was good, wholesome, and salable at the time of delivery of possession. Where Sciano did find unsalable merchandise and left it out of the inventory on March 20th, there was no objection by Hengle. Defendants alleged in their answer "that plaintiff made an extensive and diligent inspection of each and every item of stock in trade purchased from defendants and in fact discarded many items of the whole of said inventory as being spoiled, unwholesome, and unsalable and defendants did not include such items rejected in the sale." Evidently the parties themselves considered that Sciano was free to reject unsalable goods at the time that Hengle made the representation that "the goods are good."

*By the Court.*—Judgment affirmed.