SCHNUTH, Respondent, v. HARRISON, Appellant.

*No. 116. Argued September 29, 1969.—Decided October 28, 1969.*
(Also reported in 171 N. W. 2d 370.)

For the appellant there was a brief and oral argument by *James C. McKenzie* of La Crosse.

For the respondent there was a brief by *Robert D. Johns, Jr.,* and *Johns, Flaherty, Harman & Gillette,* all of La Crosse, and oral argument by *Robert D. Johns, Jr.*

WILKIE, J.   This is an action seeking rescission of the agreement between the parties by reason of false representations knowingly made by defendant to induce plaintiff to enter into the agreement.   On this appeal the issues can be simply stated:

1.   Are the findings of the trial court as to the false representations contrary to the great weight and clear preponderance of the evidence?

2.   In an action for rescission can plaintiff recover all the items of damage forming the judgment here?

Although the complaint lists six different misrepresentations which the defendant allegedly made and upon which plaintiff allegedly relied, the first three items deal with what Schnuth was to receive under the agreement and never did receive.   They are:

"(A)   The plaintiff would receive 50% of the outstanding shares of stock in River Frozen Foods, Inc.

"(B)   The plaintiff would receive $175.00 a week in salary in compensation for services performed for the corporation.

"(C)   The plaintiff would be elected president of the Corporation."

These more properly relate to elements of a breach of contract, which could not, without more, be the basis for an action for rescission and restitution.   However, the remaining three items listed in paragraph Four do properly raise the issue of misrepresentation.   They are:

"(D)   The miscellaneous inventory of frozen and canned foods had a value of $3,000.00 at the time the agreement was executed.

"(E) The miscellaneous debts of the Corporation did not exceed $3,500.00 at the time the agreement was executed, and

"(F) No litigation or lawsuits were pending against the Corporation at the time the agreement was executed."

It is well established that on appeal from a decision of a trial court sitting without a jury,[1] the court's findings of fact will be sustained unless they are contrary to the great weight and clear preponderance of the evidence.[2]

*(D) The Inventory*

Harrison, in effect, contends that the trial court could not have found that he represented to Schnuth that the inventory was worth $3,000. The record reveals that prior to entering into the agreement, Harrison had told Schnuth that there was approximately $3,000 worth of inventory on hand. The record also reveals that although Schnuth toured the warehouse and refrigeration area, he did not take an inventory.

However, it is undisputed that the goods Schnuth sold on behalf of the corporation, which were ultimately returned because they were spoiled, came from this old inventory. Harrison rather than Schnuth would appear to have been in a better position to know what condition these goods were in since in order for Schnuth to have determined that the goods were spoiled it would have been necessary for him to unpack and thaw out the cartons. Harrison at least presumably would know how long the goods were on hand. The fact that at least some

[1] When a jury acts merely in an advisory capacity, the findings of the trial judge are under inquiry on appeal, not the advisory verdict of the jury. *See Kuehn v. Kuehn* (1960), 11 Wis. 2d 15, 104 N. W. 2d 138.

[2] *Kirchen v. Gottschalk* (1965), 26 Wis. 2d 123, 125, 126, 131 N. W. 2d 885; *Estate of Dobrecevich* (1961), 14 Wis. 2d 82, 85, 109 N. W. 2d 477; *Clark v. Moru* (1963), 19 Wis. 2d 503, 504, 120 N. W. 2d 888.

of the goods were spoiled would indicate that the total value of the inventory was not as Harrison represented.[3] Thus, this finding by the trial court is not against the great weight and clear preponderance of the evidence.

### (E) Corporation Debts

The record reveals that before the agreement was entered into Schnuth asked for and received from Harrison a list of debts of the corporation. However, by the time of trial Schnuth had misplaced this list. There is a dispute as to what was included on the list. Harrison claims that a debt of $500 owed to Frioner Norwegian Frozen Fish, Ltd., was listed; Schnuth claims it was not. In any event, the agreement as written provided that the debts of the corporation were not to exceed $3,500, and the record shows that the debts did in fact exceed this amount. Thus, whether this Frioner debt was included on the original list is immaterial, since the debts did total more than $3,500. The representation as it appears in the contract is false. Here again, the finding of the trial court is not against the great weight and clear preponderance of the evidence.

### (F) No Pending Litigation

The agreement itself clearly provides that there were "no litigations or lawsuits . . . pending" against River Frozen Foods. This agreement was entered into during the early part of August of 1967. Yet, the record reveals that a lawsuit by the Frioner Norwegian Frozen Fish, Ltd., was instituted against River Frozen Foods, Inc., on March 10, 1967, five months before the parties entered into the agreement, and reduced to judgment by default on August 29, 1967, two weeks after the agreement was entered into. Thus the falsity of this representation is readily apparent. We have no hesitancy in finding that

---

[3] See generally, Sciano v. Hengle (1957), 1 Wis. 2d 273, 83 N. W. 2d 689.

the trial court's findings of fact and conclusions of law in this respect are not against the great weight and clear preponderance of the evidence.

Faced with the realization that defendant had made several false representations in order to induce plaintiff to enter into the purchase agreement, Schnuth, as the defrauded party, could elect one of the following remedies: (1) rescind, restoring the pre-existing status and sue at law to recover his payments; (2) offer to restore the status, keep his offer good, sue in equity to rescind, and recover his payments; or (3) affirm the contract and sue for the damages resulting from the fraud.[4] Schnuth chose the second alternative. His complaint recites that the action is for rescission of the contract and restitution.

In the earlier case of *Mueller v. Michels*,[5] this court explained the difference between rescission at law and in equity. At law, the party rescinded the contract by giving back what he had received and brought suit to recover his property. In equity, the party brought suit for the court to rescind, and rescission did not take place until the court decreed it.

With the merging of legal and equitable actions into one civil action,[6] the form of the remedy has become less important and the courts somewhat less than articulate in explaining the theory of relief.[7]

Several different degrees of misrepresentation have served as a basis for rescission:

"It is not necessary, in order that a contract may be rescinded for fraud or misrepresentation, that the party

[4] *See Neas v. Siemens* (1960), 10 Wis. 2d 47, 62, 102 N. W. 2d 259; *Morse Chain Co. v. T. W. Meiklejohn, Inc.* (1941), 237 Wis. 383, 388, 296 N. W. 106, and cases cited therein.

[5] (1924), 184 Wis. 324, 197 N. W. 201, 199 N. W. 380.

[6] *See* sec. 260.08, Stats.

[7] *See* Prosser, *Law of Torts* (3d ed.), pp. 634–753, chs. 18, 19, 20; 5 Williston, *Contracts* (rev. ed.), p. 4151, ch. 45, secs. 1486, *et seq. But see Stevenson v. Barwineck* (1959), 8 Wis. 2d 557, 99 N. W. 2d 690.

making the misrepresentation should have known that it was false. Innocent misrepresentation is sufficient, for though the representation may have been made innocently, it would be unjust to allow one who has made false representations, even innocently, to retain the fruits of a bargain induced by such representations. This is often called a doctrine of courts of equity as distinguished from courts of law, and doubtless in its origin it was such; but, at the present time, it is rather a distinction between a right of rescission on the one hand whether that right is asserted in a court of equity, in a court of law, or without the aid of a court, and an action for damages on the other hand." [8]

The Restatement of Contracts defines misrepresentation as:

"(1) 'Misrepresentation' in the Restatement of this subject means any manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts.
"(2) Where a misrepresentation would be likely to affect the conduct of a reasonable man with reference to a transaction with another person, the misrepresentation is material, . . . ." [9]

The Restatement also provides:

"(1) Where a party is induced to enter into a transaction with another party that he was under no duty to enter into by means of the latter's fraud or material misrepresentation, the transaction is voidable as against the latter and all who stand in no better position . . . ." [10]

It would seem that in the instant case, the representations made by Harrison as illustrated by the agreement meet all the above criteria and so can be classified as material misrepresentations. Misrepresentation has historically been a basis for rescission. [11]

---

[8] 5 Williston, *Contracts* (rev. ed.), pp. 4189–4191, sec. 1500.
[9] Restatement, 2 *Contracts*, pp. 890, 891, sec. 470.
[10] *Id.* at page 908, sec. 476.
[11] *See* 5 Williston, *Contracts* (rev. ed.), p. 4193, sec. 1501.

In *McKearn v. Lerman Tire Service, Ltd.,*[12] the plaintiffs brought an action to rescind and declare void a note and mortgage. The note and mortgage were given by plaintiffs to defendant as a satisfaction for a judgment the defendant had obtained against the plaintiffs. The plaintiffs represented the mortgage they were giving to the defendant as a second mortgage when in fact it was a third mortgage. In discussing the defendant's right to rescission, this court stated:

"The misrepresentation of McKearn, whether knowingly or inadvertently made, was a substantial breach on the part of McKearn and that misrepresentation gave the right to Lerman to rescind the agreement if it so chose."[13]

The effect of a rescission of a contract is to restore the parties to the position they would have occupied had no contract ever been made.[14] In other words, when a contract is rescinded the parties are placed in the status quo as if no contract had ever been made.

This brings us to the second issue on this appeal: Whether plaintiff is entitled to all the elements of damage as found by the trial court.

The trial court here found that Schnuth was entitled to: (a) The $5,000 he had paid in; (b) travel expenses of $624.40, incurred by him on behalf of the corporation; (c) the costs of relocating his family ($1,731.27); and (d) payment of the salary he failed to receive ($2,100).

All these items were aimed at making the plaintiff whole and were properly awarded as items of damage needed to place him in the same position he was in before the contract.

Harrison raises the question of whether Schnuth affirmed the contract by making the final payment of $1,000 on November 15, 1967, after discovering the mis-

---

[12] (1966), 32 Wis. 2d 329, 145 N. W. 2d 731.

[13] *Id.* at page 336.

[14] *See First Wisconsin Nat. Bank v. Pedley* (1932), 208 Wis. 628, 242 N. W. 512.

representations. But Schnuth made this last payment because it was required by the contract. Moreover, he testified at trial that he did this because he wanted to make sure that his friend, from whom the corporation bought some fish, was paid. The trial court found that Schnuth did not in any way affirm the contract. This is not against the great weight and clear preponderance of the evidence.

Appellant raises numerous points about allegedly improper admission of evidence, improper closing argument, and improper jury instructions. We have reviewed these contentions and find them without merit. Furthermore, it is to be remembered that this was a trial to the court with the jury acting in an advisory capacity only.

Counsel for appellant has again [15] prosecuted an appeal with many breaches of the court's rules regarding the preparation of his brief and appendix. Even the findings of fact and conclusions of law, as entered by the trial court, which had to be material to the appeal, were not printed in appellant's appendix. The respondent and the court have been forced to do much additional work which would not have been required if the appellant, through his counsel, had abided by the rules. If it were not for the fact that respondent has not asked for additional costs under sec. (Rule) 251.85, Stats., [16] we would impose the same.

*By the Court.*—Judgment affirmed.

[15] *See National Farmers Union Property & Casualty Co. v. Maca* (1965), 26 Wis. 2d 399, 132 N. W. 2d 517; *Olson v. Sentry Ins. Co.* (1968), 38 Wis. 2d 175, 156 N. W. 2d 429.

[16] On June 27, 1969, respondent's motion to strike the appellant's brief in the instant case was denied without costs and without prejudice to reassert the question at the time of briefing and argument on the merits.