HEAD & SEEMANN, INC., a Wisconsin corporation,
Plaintiff-Appellant,

v.

Bettye J. GREGG, Defendant-Respondent.†

Court of Appeals

No. 80–1572. Submitted on briefs July 27, 1981.—
Decided September 2, 1981.
(Also reported in 311 N.W.2d 667.)

† Petition to review granted.

For the plaintiff-appellant the cause was submitted on the brief of *Timothy J. Aiken* and *Mark A. Swartz* of *Samster, Aiken, Peckerman, Swartz & Mawicke, S.C.* of Milwaukee.

For the defendant-respondent the cause was submitted on the brief of *George W. Love* of *Love, Brown, Love, Phillips & Davis* of Waukesha.

Before Decker, C.J., Voss, P.J., and Scott, J.

VOSS, P.J.  Bettye Gregg fraudulently induced Head & Seemann, Inc. to sell her a home in Brookfield. She occupied the home for five months but was subsequently ejected by a court order.  In the action on the claim from which this appeal comes, Head & Seemann sought damages for the five months' lost use of the property. At issue was whether a defrauded party who obtains rescission and restitution of real estate may also recover rental value and out-of-pocket expenses for the period of lost possession.  The trial court held that the election of remedies doctrine barred an additional action for rental value and out-of-pocket expenses.  Because we do not believe that rescission and an action for damages are inconsistent remedies, we reverse.

Defendant Bettye J. Gregg offered to buy a Brookfield home from plaintiff corporation.  She represented, verbally and in writing, that she had $15,000 to $20,-000 of equity in another home and would pay this amount to plaintiff after selling the other home.  She knew, however, that she had no such equity.  Relying on these intentionally fraudulent representations, plaintiff accepted defendant's offer to buy, and the parties entered into a land contract.  After taking occupancy, defendant failed to make any of the contract payments.  Plaintiff's investigation then revealed the fraud.

Plaintiff commenced this action seeking one of two alternative forms of relief. Based on the fraud, plaintiff sought rescission, ejectment and recovery for five months of lost use of the property and out-of-pocket expenses. Alternatively, based on defendant's breach of contract, plaintiff sought rescission, foreclosure and ejectment.

The trial court granted partial summary judgment for plaintiff, rescinding the contract for fraud. The court ordered ejectment but stayed the order for two weeks pending defendant's voluntary removal. The court also obtained plaintiff's stipulation that, if defendant removed herself within the two weeks, the plaintiff's claim for damages would be dismissed. Defendant failed to vacate the property, and the court entered an interlocutory judgment of ejectment.

Defendant later sought dismissal of the damages claim based on the election of remedies doctrine. The court determined that the judgment for ejectment was an election of remedies barring recovery of damages and, therefore, dismissed the cause of action based on fraud. On appeal, this court certified this case to the Wisconsin Supreme Court to resolve the conflict in case law. The certification was denied.

Plaintiff contends that it is entitled to recover for the lost use of the property and out-of-pocket expenses during defendant's possession of the property. It contends that recovery for these items, in addition to the rescission and return of the real estate, is necessary to restore plaintiff to his status before the fraud and execution of the contract. Since these "damages" would only restore plaintiff to its previous position and would not give plaintiff the purchase price or the benefit of the bargain, plaintiff argues that the remedies are not inconsistent, and the doctrine of election of remedies should not be applied. We agree.

The election of remedies doctrine is an equitable principle barring one from maintaining inconsistent theories or forms of relief. *Bank of Commerce v. Paine, Webber, Jackson & Curtis,* 39 Wis. 2d 30, 36–39, 158 N.W.2d 350, 352–53 (1968). Its underlying purpose is to prevent double recovery for the same wrong. *Id.* at 36, 158 N.W. 2d at 352; D. Dobbs, *Handbook on the Law of Remedies* § 1.5, at 14 (1973). The label "election of remedies" is frequently used as a cloak for an estoppel or ratification where, for example, it bars a suit for rescission of a contract *subsequent* to some act of affirmance of the contract. *See, e.g., Beers v. Atlas Assurance Co.,* 231 Wis. 361, 285 N.W. 794 (1939). Wisconsin courts have been attempting to restrict the doctrine to reduce its harsh effects. *Bank of Commerce v. Paine, Webber, Jackson & Curtis,* 39 Wis. 2d at 40–42, 158 N.W.2d at 354–55; *5-M Ltd. v. Dede,* 86 Wis. 2d 287, 289, 272 N.W. 2d 110, 111 (Ct. App. 1978).

The classic application of the election of remedies doctrine is that a defrauded party has the election of either rescission or affirming the contract and seeking damages. *First National Bank & Trust Co. v. Notte,* 97 Wis. 2d 207, 225, 293 N.W.2d 530, 539 (1980). The choice is forced with respect to alternative theories in a single lawsuit because of inconsistency of both rescinding and affirming the contract. *See Seidling v. Unichem, Inc.,* 52 Wis. 2d 552, 557, 191 N.W.2d 205, 208 (1971).

Thus, it superficially appears that if a claimant chooses to seek rescission, he may not sue for damages. But the word "damages," like the label "election of remedies," impedes rather than aids the inquiry into the types of relief appropriate in a given case. Rescission is always coupled with restitution: the parties return the money, property or other benefits so as to restore each other to the position they were in prior to the transaction. In

the case of fraud or misrepresentation, the victim has the priority of restoration, and if a loss must be borne, the wrongdoer bears it. *See First National Bank & Trust Co. v. Notte,* 97 Wis. 2d at 225–26, 293 N.W.2d at 539.

This case presents a crucial question dealing with the nature of restitution. At issue is whether restitution to a rescinding fraud victim includes everything he has reasonably paid out or given up in the transaction or only includes what the other party has actually received.[1] Two Wisconsin cases provide contradictory answers.

In *Carpenter v. Mason,* 181 Wis. 114, 193 N.W. 973 (1923), plaintiff entered into a land contract in reliance on defendant's fraudulent statements. The trial court entered judgment of rescission and ordered recovery of the money paid toward the purchase plus $140 for plaintiff's costs in moving from another state as a result of the fraud. The Wisconsin Supreme Court disallowed the moving costs. The court stated that placing the parties *in statu quo* "does not mean that the parties are to be restored to the situation which existed previous to their entering into the contract." *Id.* at 116, 193 N.W. at 974. It means, the court indicated, only that each party must return what he has actually received. Defendants did not receive plaintiff's expenditures for moving. "To require them to restore more than they received would be to permit the plaintiff to recover *damages for breach of the contract.* The plaintiff does not affirm the contract but disaffirms it and seeks rescission. He may not do both." *Id.* (emphasis added).

Interestingly, a later case contradicting *Carpenter* also involved moving expenses incurred in reliance on misrep-

---

[1] Under the second possibility in which the victim gets only what the other party received, the victim's expenditures paid to third parties would not be included in his recovery.

resentations and the resulting bargain. In *Schnuth v. Harrison*, 44 Wis. 2d 326, 171 N.W.2d 370 (1969), plaintiff was fraudulently induced to buy into and to operate a business and to take a lease. In granting rescission and restitution, the trial court included awards for travel expenses, moving expenses (over $1,700) and salary the plaintiff never received. This time, the supreme court affirmed. "All these items were aimed at making the plaintiff whole and were properly awarded as items of damage needed to place him in the same position he was in before the contract." *Id.* at 339, 171 N.W.2d at 377–78.

Thus, the two cases give different answers to whether restitution is measured by the victim's actual loss or by what the wrongdoer actually received (whenever the two measures are not the same). *Schnuth* did not cite *Carpenter*, and no other Wisconsin case has criticized *Carpenter*. The instant plaintiff seeks "damages" of the restitutionary nature involved in the two conflicting cases. Under *Carpenter*, plaintiff would be barred from part or all of the monetary award he seeks on the theory that defendant received only the land or perhaps only the land and its use but not other expenses, while *Schnuth* would apparently permit the entire award.

Two possible theories can reconcile the disparities in the two cases. The first is that Wisconsin, in the *Schnuth* case, rejected the election of remedies doctrine. The other theory is that actions for rescission and restorative damages are not inconsistent.

## THE ABANDONMENT OF ELECTION OF REMEDIES DOCTRINE

One method of reconciling the *Carpenter* case and the *Schnuth* case is by concluding that Wisconsin has abandoned the election of remedies doctrine. *Carpenter v.*

*Mason* has become a somewhat infamous horror story cited as a good reason why the election of remedies doctrine ought to be abolished:

The best example that I can recall to show the need for the fraud statute [abolishing election of remedies in fraud cases in New York] is a case decided in Wisconsin during an earlier boom period. . . . The trial court allowed all three items, but the Supreme Court of Wisconsin sternly rejected the claim for moving expenses, not on the ground that they were not proximate damages resulting from the defendant's wrong, but on the ground that the plaintiff had elected to disaffirm the contract and therefore could not recover damages for deceit.

What substantial reason can be given for such a decision? Did not the defendants' wrong proximately cause the plaintiff all of the losses that he sustained? Did not the plaintiff allege and prove all of the facts necessary to entitle him to all of the items of recovery claimed? Was there any *duplication* of items of recovery? Certainly not. Was the defendant misled prejudicially by the plaintiff's suing to get his money "back," and also his money paid out for moving? No prejudicial reliance appears. Then is not the doctrine of election of remedies here merely a requirement of formal consistency? To satisfy this requirement *fully* it would seem that, in order to recover his moving expenses, the plaintiff would have to "affirm" the voidable contract, pay to the defendants the balance due on the contract price (thus sending "good money" after "bad") and then sue the wrongdoers to obtain judgment for his total expenditures. This would be "true" affirmance, angelic consistency. (It might also be construed as a complete condonation of the fraud!) But the nineteenth century courts that enjoyed the logic-chopping of the election doctrine were usually not so strict as to require the defrauded party to perform his *executory promises* to the frauddoer in order to be able to recover damages for the deceit. [Footnotes omitted, emphasis in original.]

Patterson, *Improvements in the Law of Restitution*, 40 Cornell L.Q. 667, 679–80 (1955). Professor Dobbs' criti-

cism of *Carpenter* and its election doctrine appears in his hornbook, *Remedies* § 1.5, at 14–15 and § 9.4, at 633–34.

A host of commentators support elimination of the election of remedies doctrine. A common theme is that the doctrine substitutes labels and formalism for inquiry into whether double recovery results in *fact.* The rigid doctrine goes to the other extreme, actually resulting in the undercompensation of fraud victims and the protection of undeserving wrongdoers. *See, e.g., id.;* 1 G. Palmer, *Law of Restitution* §§ 3.9–3.10 (1978) ; Hine, *Election of Remedies, a Criticism,* 26 Harv. L. Rev. 707 (1913) ; Annot., *Rescission of Contract as Affecting Right to Recover Damages for Fraud in Procuring It,* 120 A.L.R. 1154 (1939). *Cf. Roberts v. Sears, Roebuck & Co.,* 573 F.2d 976 (7th Cir.), *cert. denied,* 439 U.S. 860 (1978) (awarding rescission of patent assignment plus $1,000,000 for defendant's past profits; no inconsistency or double recovery because rescission protects future rights while money compensates past injury for fraud).

The Uniform Commercial Code eliminates the election doctrine with respect to sales of goods. Under sec. 402.721, Stats., a rescission or claim for rescission shall not "bar or be deemed inconsistent with a claim for damages or other remedy" in cases of misrepresentation or fraud. The Uniform Land Transactions Act adopted the same principle for real estate matters, relying on U.C.C. § 2–721. *See* U.L.T.A. § 2–520 and comment thereto (1975) ; *see also* § 2–518. Among damage claims recoverable in connection with rescission for fraud by virtue of § 2–520 are seller's "incidental damages" including any reasonable charges, expenses or commissions incurred in repossessing and reselling the real estate. U.L.T.A. §§ 2–502, 2–504, 2–507.

At least two states have eliminated the formal doctrine by statute. California Civil Code § 1692 (West) provides in part:

A claim for damages is not inconsistent with a claim for relief based upon rescission. The aggrieved party shall be awarded complete relief, including restitution of benefits, if any, conferred by him as a result of the transaction and any consequential damages to which he is entitled; but such relief shall not include duplicate or inconsistent items of recovery.

*See also* N.Y. Civ. Prac. Law § 3002 (e) (McKinney) (in cases of fraud or misrepresentation).[2]

It appears that the commentators and the modern trend of the law support abandonment of the formalistic shell of the doctrine of election of remedies. The law can prevent windfalls to claimants without going overboard by requiring that fraud victims bear part of the loss, absolving defrauding parties of their proper responsibility.

Elimination of the formal doctrine would permit courts to focus on the rule of one satisfaction and de-emphasize theoretical consistency of remedies. In the instant case, plaintiff might have its rescission and consequential damages for the *tort* of fraud or deceit. Since the tort system is designed to make one whole to the extent pos-

---

[2] N.Y.C.P.L. § 3002 (e) reads as follows:

(e) Claim for damages and rescission. A claim for damages sustained as a result of fraud or misrepresentation in the inducement of a contract or other transaction, shall not be deemed inconsistent with a claim for rescission or based upon rescission. In an action for rescission or based upon rescission the aggrieved party shall be allowed to obtain complete relief in one action, including rescission, restitution of the benefits, if any, conferred by him as a result of the transaction, and damages to which he is entitled because of such fraud or misrepresentation; but such complete relief shall not include duplication of items of recovery.

sible through a monetary award, plaintiff would receive such damages in tort which in addition to return of the land would restore it to its preinjury position.[3] *See* sec. 402.721, Stats. No double recovery would result in this case.

Although the trend in law appears to support abandoning the election doctrine, no case indicates that this, in fact, has been done in Wisconsin. The *Schnuth* case did not end the use of the election of remedies doctrine in Wisconsin, it merely gave a different description of restitution.

## RESCISSION AND RESTORATIVE DAMAGES AS CONSISTENT REMEDIES

A second approach to reconciling the two cases is to retain the formal election of remedies doctrine but clearly define rescission and restorative damages as entirely consistent with each other and therefore not subject to election. We believe this is what *Schnuth* intended.

Other state courts have adopted this approach. In *Jennings v. Lee,* 105 Ariz. 167, 461 P.2d 161 (1969), plain-

---

[3] An issue *not* presented by this case is whether a claimant similar to the plaintiff could ever additionally seek the benefit of the bargain. Again, analysis would not depend on theoretical consistency or the fact one seeks recovery through equity, tort and contract. Rather, a court would prevent only actual duplication of items recovered.

Where a claimant regains the specific property, he usually regains the ability to obtain the profit from resale. This would render an award for lost profit duplicative and not recoverable. If the market fell and the original contract price were not obtainable, an award for the difference might not be duplicative. On the other hand, a higher resale price should not inure to the benefit of the wrongdoer. See sec. 402.706, Stats.

The instant plaintiff does not seek the benefit of the bargain or any other elements of contract damage.

tiff not only obtained rescission and return of her real estate but also $11,000 for the real estate agent's commission she paid as well as sums sufficient to release two mortgages she executed.

Her recovery of this money is *not inconsistent with the rule that a party may not rescind and recover damages in the same suit*. That rule is designed to prevent a defrauded party from both repudiating the contract and then suing on it only to *gain the benefit of the bargain*. There is ample authority that a defrauded party may not only receive back the consideration he gave, but also may recover any sums that are necessary to restore him to his position prior to the making of the contract.

*Id.* at 173, 461 P.2d at 167 (emphasis added). *See also Kent Homes v. Frankel,* 128 A.2d 444 (D.C. Ct. App. 1957) (awarding commuting costs); *Kinkade v. Markus,* 38 Or. App. 131, 589 P.2d 1142 (1979).

Many other cases recognize that "disaffirmance" of damages only rules out "expectation" damages—the benefit of the bargain—and distinguish restitutionary "damages."

Damages for restitution are different from damages for breach of contract; and the former are permissible to restore the plaintiff to his former position when rescission is granted because of fraud. *Kinkade v. Markus,* 38 Or. App. 131, 589 P.2d 1142 (1979). Several other states allow the recovery of restitutionary damages along with rescission when fraud or misrepresentations is the cause of the claim. *Lobdell v. Miller,* 114 Cal. App. 2d 328, 250 P.2d 357 (1952); *Bernofsky v. Schwartz,* 370 So. 2d 590 (La. App. 1979); *Mock v. Duke,* 20 Mich. App. 453, 174 N.W.2d 161 (1969); *Sawyer v. Pierce,* 580 S.W.2d 117 (Tex. Civ. App. 1979); N.Y. Civ Prac. Law 3002(e) (McKinney). We believe that restitutionary damages conform with the purpose of rescission, which is to put the defrauded party back in as good a position as he occupied before entering the contract.

Consequently, we hold that such damages may be awarded along with rescission.

*Robison v. Katz*, 94 N.M. 314, 320, 610 P.2d 201, 207 (1980). In equity, the court makes the calculated adjustments necessary to do complete justice. If complete justice requires that damages be awarded with the rescission, the court will award them. *Atkins v. Beasley*, 544 S.W.2d 505, 507 (Tex. Civ. App. 1976) (restitutionary damages for cost of drilling an oil well, not damages at law). *Accord*, 3 H. Black, *A Treatise on the Rescission of Contracts and Cancellation of Written Instruments* § 695, at 1653 (J. Lee 2d ed. 1929).

Two clear forms of restitutionary awards are recoverable when coupled with rescission: The first is "reasonable expenditures in reliance on the bargain." *Bodenhamer v. Patterson*, 278 Or. 367, 377, 563 P.2d 1212, 1218 (1977) (road and septic tank expenditures which did not enhance value of land); *accord, Hammac v. Skinner*, 265 Ala. 9, 89 So. 2d 70 (1956) (moving expenses); *Grissom v. Moran*, 154 Ind. App. 419, 290 N.E. 2d 119, 292 N.E.2d 627 (1973); *Mock v. Duke*, 20 Mich. App. 453, 174 N.W.2d 161 (1969) (land contract, well drilling); C. McCormick, *Handbook on the Law of Damages* § 121, at 448–49 n. 2 (1935). The second is the rent or use value of the real estate during the other's possession. *Blaising v. Mills*, 374 N.E.2d 1166, 1172 (Ind. App. 1978); *Goff v. Graham*, 159 Ind. App. 324, 339, 306 N.E.2d 758, 767–68 (1974); *Dews v. Floyd*, 413 S.W.2d 800, 806 (Tex. Civ. App. 1967); Dobbs, *Remedies* § 9.4, at 632; *Restatement of Restitution* § 157, comment d and illustrations 3 and 4 (1937). *Cf. Smith v. National Resort Communities, Inc.*, 585 S.W.2d 655 (Tex. 1979) (defrauded buyer's payments for taxes, interest and maintenance fees).

Even in situations where the buyer is defrauded and entitled to the rescission, he or she must ordinarily pay rental value to the seller. This provides *a fortiori* support for the above authorities. *See Troxell v. Sandusky,* 247 Ark. 898, 448 S.W.2d 28 (1969) ; *Williams v. Dumas,* 40 Ill. App. 3d 782, 352 N.E.2d 266 (1976) ; *Farmer v. Groves,* 276 Or. 563, 555 P.2d 1252 (1976).

In the instant case, plaintiff seeks rental value and incidental expenses as part of restitution, items clearly recoverable under the great weight of authority. We believe that *Schnuth* recognized the position that rescission and restorative damages are consistent remedies which work together to restore the injured party to his precontract position. For this reason, restorative damages, which in this case is rent, should be allowed in addition to rescission. The two are not inconsistent remedies.

*By the Court.*—Order reversed.