Steven C. TIETSWORTH, David Bratz, John W. Myers, Gary Streitenberger, and Gary Wegner, Plaintiffs-Appellants,

v.

HARLEY-DAVIDSON, INC., and Harley-Davidson Motor Company, Defendants-Respondents-Petitioners.

Supreme Court

*No. 02–1034. Oral argument November 5, 2003.— Decided March 26, 2004.*

2004 WI 32

(Also reported in 677 N.W.2d 233.)

146

For the defendants-respondents-petitioners there were briefs by *W. Stuart Parsons, Patrick W. Schmidt, O. Thomas Armstrong, Jeffrey O. Davis, Kelly H. Twigger* and *Quarles & Brady,* Milwaukee, and *Robert L. Binder* and *Foley & Lardner,* Milwaukee, and oral argument by *W. Stuart Parsons.*

For the plaintiffs-appellants there was a brief by *Ted W. Warshafsky, Frank T. Crivello, II,* and *Warshafsky, Rotter, Tarnoff, Reinhardt & Bloch, S.C.,* Milwaukee; *Jonathan D. Selbin, Lisa J. Leebove* and *Lieff, Cabraser, Heimann & Bernstein, LLP,* San Francisco, CA; and *David J. Bershad, Michael M. Buchman* and *Milberg, Weiss, Bershad, Hynes & Lerach, LLP,* New York, NY and *Shpetim Ademi, Guri Ademi, Robert K.*

*O'Reilly* and *Ademi & O'Reilly, LLP,* Cudahy, and oral argument by *Jonathan D. Selbin.*

An amicus curiae brief was filed by *James A. Buchen,* Madison, on behalf of Wisconsin Manufacturers & Commerce.

An amicus curiae brief was filed by *Jeffrey S. Fertl,* Milwaukee, *John H. Beisner,* Washington, DC, *Hugh F. Young, Jr. (of counsel)* Reston, VA, on behalf of Product Liability Advisory Council, Inc.

¶ 1. DIANE S. SYKES, J. This is a class action lawsuit on behalf of certain Harley-Davidson motorcycle owners seeking compensatory and punitive damages and injunctive relief, under several legal theories, for an alleged defect in the motorcycles' engines. The plaintiffs have not alleged any personal injury or property damage caused by the defective engines, nor have they alleged that their motorcycle engines have actually failed or malfunctioned in any way. They allege, rather, that their motorcycles are diminished in value because the defect creates a "propensity" for premature engine failure.

¶ 2. The plaintiffs originally pleaded claims for negligence, strict products liability, fraud, and deceptive trade practices under Wis. Stat. § 100.18(1) and (11)(b) (1999–2000).[1] The circuit court dismissed the entire action for failure to state a claim. The plaintiffs appealed only the dismissal of their claims for common-law fraud and statutory deceptive trade practices, and the court of appeals reinstated both. We reverse.

¶ 3. An allegation that a product is diminished in value because the product line has demonstrated a propensity for premature failure such that the product

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

might or will at some point in the future fail prematurely is too uncertain and speculative to constitute a legally cognizable tort injury and is therefore insufficient to state damages in a tort claim for fraud. In addition, the economic loss doctrine bars this claim.

¶ 4. The plaintiffs have also failed to state a claim for deceptive trade practices in violation of Wis. Stat. § 100.18. The statute provides a private cause of action for pecuniary loss resulting from an advertisement to the public that contains an "assertion, representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. § 100.18(1), (11)(b). The plaintiffs' claim is based primarily on the allegation that Harley-Davidson ("Harley") failed to disclose the engine defect prior to the plaintiffs' motorcycle purchases. A non-disclosure does not constitute an "assertion, representation or statement of fact" under Wis. Stat. § 100.18(1). The plaintiffs also allege that Harley's advertising material described the motorcycle engine as "premium" quality, "a masterpiece," and "[e]ighty-eight cubic inches filled to the brim with torque and ready to take you thundering down the road." This is classic advertising puffery, non-actionable at common law and under the statute.

## I. FACTS AND PROCEDURAL HISTORY

¶ 5. This is an appeal of a motion to dismiss for failure to state a claim, and therefore we accept as true, for purposes of this review, the following facts from the amended class action complaint. Plaintiff Steven C. Tietsworth and the members of the proposed class own or lease 1999 or early-2000 model year Harley motorcycles equipped with Twin Cam 88 or Twin Cam 88B

engines. Harley's marketing and advertising literature contained the following statement about the TC-88 engines:

> Developing [the TC-88s] was a six-year process. . . . The result is a masterpiece. We studied everything from the way oil moves through the inside, to the way a rocker cover does its job of staying oil-tight. Only 21 functional parts carry over into the new design. What does carry over is the power of a Harley-Davidson® engine, only more so.

Harley also stated that the motorcycles were "premium" quality, and described the TC-88 engine as "[e]ighty-eight cubic inches filled to the brim with torque and ready to take you thundering down the road."

¶ 6. On January 22, 2001, Harley sent a letter to Tietsworth and other owners of Harley motorcycles informing them that "the rear cam bearing in a *small number* of Harley-Davidson's Twin Cam 88 engines has failed. While it is unlikely that you will ever have to worry about this situation, you have our assurance that Harley-Davidson is committed to your satisfaction." (Emphasis added in amended complaint.) The letter went on to explain that the company was extending the warranty on the cam bearing from the standard one-year/unlimited mileage warranty, to a five-year/50,000 mile warranty. Separately, Harley developed a $495 "cam bearing repair kit" and made the kit available to its dealers and service departments, "to expedite rear cam bearing repair."

¶ 7. On June 28, 2001, Tietsworth, a California resident, filed this proposed class action lawsuit against Harley in Milwaukee County Circuit Court, alleging four claims: (1) negligence; (2) strict products liability; (3) common-law fraudulent concealment; and (4) deceptive trade practices contrary to Wis. Stat. § 100.18(1)

154

(the Wisconsin Deceptive Trade Practices Act or "DTPA"). Tietsworth later amended the complaint to name as representative plaintiffs four Wisconsin owners of motorcycles equipped with TC-88 engines.

¶ 8. The amended complaint alleges that the cam bearing mechanism in the 1999 and early-2000 model year TC-88 engines is inherently defective, causing an unreasonably dangerous propensity for premature engine failure. As is pertinent to the common-law fraud and statutory DTPA claims, the amended complaint alleged that Harley's failure to disclose the cam bearing defect induced the plaintiffs to purchase their motorcycles by causing them to reasonably rely upon Harley's representations regarding the "premium" quality of the motorcycles.

¶ 9. The amended complaint further alleges that if the plaintiffs had known of the engine defect, they either would not have purchased the product or would have paid less for it. The amended complaint does not allege that the plaintiffs' motorcycles have actually suffered engine failure, have malfunctioned in any way, or are reasonably certain to fail or malfunction. Nor does the amended complaint allege any property damage or personal injury arising out of the engine defect. Rather, the amended complaint alleges that the plaintiffs' motorcycles have diminished value, including diminished resale value, because Harley motorcycles equipped with TC-88 engines have demonstrated a "propensity" for premature engine failure and/or fail prematurely.

¶ 10. Harley moved to dismiss the complaint. The Milwaukee County Circuit Court, the Honorable William J. Haese, granted Harley's motion, dismissing the complaint in its entirety for failure to state a claim. The plaintiffs appealed the dismissal of their common-law

155

fraud and DTPA claims only, and the court of appeals reinstated both. *Tietsworth v. Harley-Davidson, Inc.,* 2003 WI App 75, ¶ 1, 261 Wis. 2d 755, 661 N.W.2d 450.

## II. STANDARDS OF REVIEW

¶ 11. A motion to dismiss for failure to state a claim tests whether the complaint is legally sufficient to state a cause of action for which relief may be granted. *Watts v. Watts,* 137 Wis. 2d 506, 512, 405 N.W.2d 305 (1987). We review a dismissal for failure to state a claim de novo, accepting the facts alleged in the complaint (or here, the amended complaint) as true for purposes of our review. *Id.; see also Northridge Co. v. W.R. Grace & Co.,* 162 Wis. 2d 918, 923–24, 471 N.W.2d 179 (1991).

## III. DISCUSSION

A. Common-Law Fraud Claim

¶ 12. The plaintiffs' common-law fraud claim is premised on the allegation that Harley failed to disclose or concealed the existence of the cam bearing defect prior to the plaintiffs' purchases of their motorcycles. It is well-established that a nondisclosure is not actionable as a misrepresentation tort unless there is a duty to disclose. *Ollerman v. O'Rourke Co., Inc.,* 94 Wis. 2d 17, 26, 288 N.W.2d 95 (1980). Our decision in *Ollerman* outlined the three categories of misrepresentation in Wisconsin law—intentional misrepresentation, negligent misrepresentation, and strict responsibility misrepresentation—and described the common and distinct elements of the three torts. *Id.* at 24–25.

156

¶ 13. All misrepresentation claims share the following required elements: 1) the defendant must have made a representation of fact to the plaintiff; 2) the representation of fact must be false; and 3) the plaintiff must have believed and relied on the misrepresentation to his detriment or damage. *Id.* The plaintiffs here allege intentional misrepresentation, which carries the following additional elements: 4) the defendant must have made the misrepresentation with knowledge that it was false or recklessly without caring whether it was true or false; and 5) the defendant must have made the misrepresentation with intent to deceive and to induce the plaintiff to act on it to his detriment or damage. *Id.*

¶ 14. *Ollerman* reiterated the general rule that in a sales or business transaction, "silence, a failure to disclose a fact, is not an intentional misrepresentation unless the seller has a duty to disclose." *Id.* at 26. The existence and scope of a duty to disclose are questions of law for the court. *Id.* at 27. *Ollerman* held that "a subdivider-vendor of a residential lot has a duty to a 'non-commercial' purchaser to disclose facts which are known to the vendor, which are material to the transaction, and which are not readily discernible to the purchaser." *Id.* at 42. We specified that this was a "narrow holding," premised on certain policy considerations present in non-commercial real estate transactions. *Id.* at 41–42.

¶ 15. The transactions at issue here, however, are motorcycle purchases, not residential real estate purchases, and it is an open question whether the duty to disclose recognized in *Ollerman* extends more broadly to sales of consumer goods. This is a significant common-law policy issue. *Id.* at 27. ("[W]hen a court

resolves a question of legal duty the court is making a policy determination.") But the parties did not brief it, and therefore we do not decide it.

### i. No Legally Cognizable Injury

¶ 16. *Ollerman* also held that damages in intentional misrepresentation cases are measured according to the "benefit of the bargain" rule, "typically stated as the difference between the value of the property as represented and its actual value as purchased." *Id.* at 52–53. "Benefit of the bargain" damages in fraud cases "depend on the nature of the bargain and the circumstances of each case." *Id.* at 53.

¶ 17. In the context of deciding when a claim accrues for purposes of the statute of limitations, we have generally held that a tort claim is not capable of present enforcement (and therefore does not accrue) unless the plaintiff has suffered actual damage. *Pritzlaff v. Archdiocese of Milwaukee,* 194 Wis. 2d 302, 315, 533 N.W.2d 780 (1995); *Hennekens v. Hoerl,* 160 Wis. 2d 144, 152, 465 N.W.2d 812 (1991). Actual damage is harm that has already occurred or is "reasonably certain" to occur in the future. *Pritzlaff,* 194 Wis. 2d at 315; *Hennekens,* 160 Wis. 2d at 152–53. Actual damage is not the mere possibility of future harm. *Id.* at 153 (citing *Meracle v. Children's Serv. Soc.,* 149 Wis. 2d 19, 26–27, 437 N.W.2d 532 (1989)). By statute, a fraud claim accrues when the aggrieved party discovers the facts constituting the fraud. Wis. Stat. § 893.93(1)(b).[2] Although we are not confronted here with a question of

---

[2] The statute modifies the older cases cited by the plaintiffs. *Gollon v. Jackson Milling Co.,* 224 Wis. 618, 625, 273 N.W. 59

when this claim accrued for purposes of a statute of limitations defense, the amended complaint must adequately plead an actual injury—a loss or damage that has already occurred or is reasonably certain to occur—in order to state an actionable fraud claim. *Ollerman,* 94 Wis. 2d at 25, 54. In addition, fraud claims must be pleaded with particularity. Wis. Stat. § 802.03(2).

¶ 18. The injury complained of here is diminution in value only—the plaintiffs allege that their motorcycles are worth less than they paid for them. However, the amended complaint does not allege that the plaintiffs' motorcycles have diminished value because their engines have failed, will fail, or are reasonably certain to fail as a result of the TC-88 cam bearing defect. The amended complaint does not allege that the plaintiffs have sold their motorcycles at a loss because of the alleged engine defect. The amended complaint alleges only that the motorcycles have diminished value— primarily diminished potential resale value—because Harley motorcycles equipped with TC-88 engines have demonstrated a "propensity" for premature engine failure and/or will fail as a result of the cam bearing defect. This is insufficient to state a legally cognizable injury for purposes of a fraud claim.

¶ 19. Diminished value premised upon a mere possibility of future product failure is too speculative and uncertain to support a fraud claim. The plaintiffs

(1937) (a fraud is complete and cause of action accrues at the time the fraud is perpetrated, not when the fraud is discovered or consequential damages occur); *Stahl v. Broeckert,* 170 Wis. 627, 629, 176 N.W. 66 (1920) (same); *Jacobs v. Frederick,* 81 Wis. 254, 256, 51 N.W. 320 (1892) (same).

do not specifically allege that their particular motorcycles will fail prematurely, only that the Harley product line that consists of motorcycles with TC-88 engines has demonstrated a propensity for premature engine failure. An allegation that a particular product line fails prematurely does not constitute an allegation that the plaintiffs' particular motorcycles will do so, only that there is a possibility that they will do so.

¶ 20. We certainly agree with the court of appeals that the damages allegations in a fraud complaint are not evaluated against a standard of "absolute certainty" for purposes of a motion to dismiss for failure to state a claim. *Tietsworth,* 261 Wis. 2d 755, ¶ 16. But an allegation that a product is diminished in value because of an event or circumstance that might—or might not—occur in the future is inherently conjectural and does not allege actual benefit-of-the-bargain damages with the "reasonable certainty" required to state a fraud claim.

¶ 21. This conclusion is consistent with many federal and state court decisions that have affirmed the dismissal of claims brought under fraud, strict products liability, and other tort theories where the allegedly defective product has not actually malfunctioned. These "no injury" cases are too numerous to list, but for a representative sample, *see,* e.g., *Angus v. Shiley Inc.,* 989 F.2d 142, 147–48 (3d Cir. 1993) (affirming dismissal of a claim for intentional infliction of emotional distress based on allegedly defective heart valve that was functioning properly); *Carlson v. General Motors Corp.,* 883 F.2d 287, 297 (4th Cir. 1989) (affirming dismissal of a claim for diminished resale value of diesel cars due to "poor reputation" rather than actual damage or loss resulting from vehicle defect); *Briehl v. General Motors*

160

*Corp.,* 172 F.3d 623, 627–29 (8th Cir. 1999) (affirming dismissal of class action lawsuit for fraud and breach of warranty where the only alleged damage from vehicles' defective brake system was overpayment and diminished resale value); *Jarman v. United Industries Corp.,* 98 F.Supp.2d 757, 767 (S.D. Miss. 2000) (dismissing fraud, warranty, and various statutory claims for purchase of allegedly ineffective pesticide where there is no allegation of actual product failure); *Weaver v. Chrysler Corp.,* 172 F.R.D. 96, 99–100 (S.D.N.Y. 1997) (dismissing class action fraud and warranty lawsuit for allegedly defective integrated child seats where there is no allegation that the product has malfunctioned or the defect manifested itself); *Yost v. General Motors Corp.,* 651 F.Supp. 656, 657–58 (D.N.J. 1986) (dismissing fraud and warranty claim for alleged engine defect where engine has not malfunctioned and plaintiff alleges diminished value only); *Ziegelmann v. DaimlerChrysler Corp.,* 649 N.W.2d 556, 559–65 (N.D. 2002) (collecting cases and dismissing class action fraud and negligence lawsuit for alleged brake system defect where damages were premised only on diminution in value); *Frank v. Daimler-Chrysler Corp.,* 741 N.Y.S.2d 9, 17 (N.Y. App. Div. 2002) (dismissing class action fraud, negligence, and products liability lawsuit for alleged seat backrest defect in the absence of allegation of actual product failure); *Yu v. Int'l Bus. Mach. Corp.,* 732 N.E.2d 1173, 1177–78 (Ill. App. 2000) (affirming dismissal of class action fraud, negligence, and deceptive trade practices lawsuit for allegedly defective computer software where there was no allegation of actual product failure); *Ford Motor Co. v. Rice,* 726 So.2d 626, 631 (Ala. 1998) (affirming dismissal of class action fraud lawsuit for SUV

design defect alleged to cause rollover tendency where defect did not manifest itself and vehicles did not roll over).

¶ 22. We note, however, that the amended complaint does contain one allegation that is arguably sufficient to state a more particularized injury to these plaintiffs: at paragraph 35 of the amended complaint the plaintiffs allege that Harley knew that "all of the motorcycles with the TC-88s are defective and will prematurely fail." This reference to "all" motorcycles with TC-88 engines includes the plaintiffs' motorcycles, and therefore can be read as the equivalent of a more particularized allegation that the plaintiffs' motorcycles will fail prematurely. Accordingly, we address the application of the economic loss doctrine to this claim.

ii. Economic Loss Doctrine

¶ 23. Apart from the generally insufficient damages allegations in the fraud cause of action, the economic loss doctrine bars this claim. The economic loss doctrine is a judicially-created remedies principle that operates generally to preclude contracting parties from pursuing tort recovery for purely economic or commercial losses associated with the contract relationship. *Digicorp, Inc. v. Ameritech Corp.*, 2003 WI 54, ¶¶ 33–35, 262 Wis. 2d 32, 662 N.W.2d 652.

¶ 24. Adopted by this court in *Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.*, 148 Wis. 2d 910, 921, 437 N.W.2d 213 (1989), the economic loss doctrine precludes recovery in tort for economic losses resulting from the failure of a product to live up to a contracting party's expectations. *Wausau Tile, Inc. v.*

162

*County Concrete Corp.,* 226 Wis. 2d 235, 245–46, 593 N.W.2d 445 (1999). The doctrine generally "requires transacting parties in Wisconsin to pursue only their contractual remedies when asserting an economic loss claim." *Digicorp,* 262 Wis. 2d 32, ¶ 34.

¶ 25. "Economic loss" for purposes of the doctrine includes the diminution in the value of the product because it is inferior and does not work for the general purposes for which it was manufactured and sold. *Northridge,* 162 Wis. 2d at 925–26. It includes both direct economic loss and consequential economic loss. *Daanen & Janssen, Inc. v. Cedarapids, Inc.,* 216 Wis. 2d 395, 401, 573 N.W.2d 842 (1998). The economic loss doctrine has been extended to consumer transactions as well as transactions between commercial contracting parties. *State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.,* 225 Wis. 2d 305, 311–12, 592 N.W.2d 201 (1999).

¶ 26. The economic loss doctrine is "based on an understanding that contract law and the law of warranty, in particular, is better suited than tort law for dealing with purely economic loss in the commercial arena." *Daanen,* 216 Wis. 2d at 403–04. "If a [contracting party] is permitted to sue in tort when a transaction does not work out as expected, that party is in effect rewriting the agreement to obtain a benefit that was not part of the bargain." *Kailin v. Armstrong,* 2002 WI App 70, ¶ 27 n.19, 252 Wis. 2d 676, 643 N.W.2d 132.

¶ 27. Thus, we have often stated that the economic loss doctrine serves the following three important common-law policies:

> (1) to maintain the fundamental distinction between tort and contract law; (2) to protect commercial parties' freedom to allocate economic risk by contract; and (3)

to encourage the party best situated to assess the risk of economic loss, the commercial purchaser, to assume, allocate, or insure against the risk.

*Daanen,* 216 Wis. 2d at 403.

■

¶ 28. The distinction between tort and contract law rests on their differing concepts of duty: "contract law rests on bargained-for obligations, while tort law is based on legal obligations" imposed on society at large. *Wausau Tile,* 226 Wis. 2d at 247; *see also State Farm,* 225 Wis. 2d at 316–18. The economic loss doctrine "recognizes that whether a product meets a certain level of performance or a purchaser's expectations is not a matter of societal interest [but] [r]ather, . . . [is] a matter of contract." *Id.* at 321. "These differences in the source and nature of duty in contract and tort law produce different rules regarding remedy and damages (punitive damages are not recoverable in contract actions, for example), and the economic loss doctrine exists in large part to keep each in its proper sphere." *Digicorp,* 262 Wis. 2d 32, ¶ 75 (Sykes, J., concurring in part, dissenting in part).

¶ 29. The economic loss doctrine has been applied by Wisconsin courts to bar claims of negligent and strict responsibility misrepresentation, and by federal courts applying Wisconsin law to bar claims of negligent, strict responsibility, and intentional misrepresentation. *Selzer v. Brunsell Bros., Ltd.,* 2002 WI App 232, ¶¶ 31–33, 257 Wis. 2d 809, 652 N.W.2d 806 (negligent and strict responsibility misrepresentation); *Home Valu, Inc. v. Pep Boys,* 213 F.3d 960, 964 (7th Cir. 2000) (intentional, negligent, and strict responsibility misrepresentation); *Cooper Power Systems, Inc. v. Union Carbide Chems. & Plastics Co., Inc.,* 123 F.3d 675, 682 (7th

164

Cir. 1997) (intentional misrepresentation); *Badger Pharmacal, Inc. v. Colgate-Palmolive Co.*, 1 F.3d 621, 628 (7th Cir. 1993) (negligent and strict responsibility misrepresentation).

¶ 30. Applying the economic loss doctrine to misrepresentation claims furthers the doctrine's central purpose:

> Where there are well-developed contractual remedies, such as the remedies that the Uniform Commercial Code (in force in all U.S. states) provides for breach of warranty of the quality, fitness, or specifications of goods, there is no need to provide tort remedies for misrepresentation. The tort remedies would duplicate the contract remedies, adding unnecessary complexity to the law. Worse, the provision of these duplicative tort remedies would undermine contract law.

*All-Tech Telecom*, 174 F.3d 862, 865 (7th Cir. 1999). Thus, "misrepresentations such as these, that ultimately concern the quality of the product sold, are properly remedied through claims for breach of warranty." *Cooper Power Systems*, 123 F.3d at 682.

¶ 31. We cited generally to the foregoing line of federal appellate opinions in last term's decision in *Digicorp*, 262 Wis. 2d 32, ¶¶ 43–45. *Digicorp* presupposed the general applicability of the economic loss doctrine to misrepresentation claims; the case tested the continued viability of the court of appeals' decision in *Douglas-Hanson Co., Inc. v. BF Goodrich Co.*, 229 Wis. 2d 132, 598 N.W.2d 262 (Ct. App. 1999), which had recognized an exception to the economic loss doctrine for claims of intentional fraud-in-the-inducement of a

contract.[3] Also at issue in *Digicorp* was an alternative to *Douglas-Hanson*'s broad fraud exception to the economic loss doctrine: the so-called *Huron Tool* claim, based on the Michigan case of *Huron Tool and Engineering Co. v. Precision Consulting Services, Inc.*, 532 N.W.2d 541 (Mich. Ct. App. 1995), which recognized a narrow fraud-in-the-inducement cause of action for misrepresentations "extraneous to" and not "interwoven with" the subject matter of the contract.

¶ 32. Two justices did not participate in *Digicorp,* however, and the five members of the court who decided the case divided 2–1-2 on the issue of a fraud-in-the-inducement exception to the economic loss doctrine. *Digicorp,* 262 Wis. 2d 32, ¶ 5 n.2 (Crooks, J., lead opinion, joined by Prosser, J.); ¶ 82 n.3 (Sykes, J., concurring in part, dissenting in part); ¶ 85 (Bradley, J., dissenting, joined by Bablitch, J.). A majority of the justices participating—Justices Crooks, who authored the lead opinion, joined by Justice Prosser and this writer—overruled *Douglas-Hanson Co.* to the extent that it recognized a broad exception to the economic loss doctrine for all claims of fraud-in-the-inducement of a contract. *Digicorp,* 262 Wis. 2d 32, ¶ 51.

¶ 33. Two members of the *Digicorp* majority, Justices Crooks and Prosser, announced their recognition of a narrow *Huron Tool*-type cause of action as an exception to the economic loss doctrine. *Id.* at ¶¶ 3, 5 n.2, 51. This writer dissented from that part of the lead opinion, concluding that a fraud-in-the-inducement exception to the economic loss doctrine was unnecessary

[3] We accepted review of *Douglas-Hanson Co. v. BF Goodrich Co.*, 229 Wis. 2d 132, 598 N.W.2d 262 (Ct. App. 1999), but divided evenly, with one justice not participating, resulting in a summary affirmance. *Douglas-Hanson Co. v. BF Goodrich Co.*, 2000 WI 22, 233 Wis. 2d 276, 607 N.W.2d 621.

and inappropriate, because contract remedies at law and in equity for contracts fraudulently induced were adequate. *Id.* at ¶¶ 73–83 (Sykes, J., concurring in part, dissenting in part). The three-justice majority reversed the judgment, agreeing that the facts of the case were insufficient to satisfy even a narrow, *Huron Tool*-type claim. *Id.,* ¶¶ 62, 82.

¶ 34.　Justice Bradley dissented in *Digicorp,* joined by Justice Bablitch; the dissenters rejected *Huron Tool,* and would have maintained *Douglas-Hanson* in its entirety. *Id.,* ¶¶ 84–91. Thus, while a majority of the justices participating in *Digicorp* overruled *Douglas-Hanson,* and a separate majority announced a willingness to allow *some* type of fraud-in-the-inducement tort as an exception to the economic loss doctrine, three of the five justices participating (albeit different sets of three) rejected *both Douglas-Hanson* and *Huron Tool.* Accordingly, *Digicorp* did not produce the majority agreement necessary for the authoritative recognition of an element-specific fraud-in-the-inducement tort cause of action as an exception to the economic loss doctrine.

¶ 35.　This case does not present an opportunity to determine whether a *Huron Tool*-type cause of action as an exception to the economic loss doctrine would be recognized by a majority of this court. The fraud alleged here plainly pertains to the character and quality of the goods that are the subject matter of the contract.

¶ 36.　As such, the plaintiffs have warranty remedies for the alleged defects in their motorcycles. In addition, there are contract remedies at law and in equity to the extent that the plaintiffs were fraudulently induced to purchase their motorcycles. A contract fraudulently induced is void or voidable; a party fraudu-

167

lently induced to enter a contract may affirm the contract and seek damages for breach or pursue the equitable remedy of rescission and seek restitutionary damages, including sums necessary to restore the party fraudulently induced to his position prior to the making of the contract. *First Nat'l Bank & Trust Co. of Racine v. Notte,* 97 Wis. 2d 207, 225, 293 N.W.2d 530 (1980); *Eklund v. Koenig & Assocs.,* 153 Wis. 2d 374, 381, 451 N.W.2d 150 (Ct. App. 1989); *Head & Seemann, Inc. v. Gregg,* 104 Wis. 2d 156, 166–67, 311 N.W.2d 667 (Ct. App 1981). The economic loss doctrine does not bar these *contract* remedies for fraudulently induced contracts. *See Harley-Davidson Motor Co v. Powersports, Inc.,* 319 F.3d 973, 978 n.7 (7th Cir. 2003) (collecting Wisconsin cases).

¶ 37. In short, we see no reason to recognize an exception to the economic loss doctrine to allow this consumer contract dispute to be remedied as an intentional misrepresentation tort. The economic loss doctrine bars the plaintiffs' common-law fraud claim. The plaintiffs may have contract remedies—breach of contract/warranty or rescission and restitution—but may not pursue a tort claim for misrepresentation premised on having purchased allegedly defective motorcycles.

B. DTPA Claim

¶ 38. The plaintiffs' statutory claim is based on Wisconsin's Deceptive Trade Practices Act, Wis. Stat. § 100.18(1), which generally prohibits false, deceptive, or misleading representations or statements of fact in public advertisements or sales announcements. The DTPA provides, in pertinent part:

> No person, firm, corporation or association, or agent or employee thereof . . . with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase, sale, hire, use or lease of any . . . merchandise . . . shall make . . . an advertisement, announcement, statement or representation of any kind to the public . . . *which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.*

Wis. Stat. § 100.18(1) (emphasis added). The DTPA provides a private cause of action for persons suffering a pecuniary loss as a result of a violation of the statute:

> Any person suffering pecuniary loss because of a violation of this section by any other person may sue in any court of competent jurisdiction and shall recover such pecuniary loss, together with costs, including reasonable attorney fees.

Wis. Stat. § 100.18(11)(b)2.

¶ 39. Under the terms of the statute, a plaintiff asserting a DTPA claim must allege that the defendant has, with the specified intent, made an "advertisement, announcement, statement or representation . . . to the public," which contains an "assertion, representation or statement of fact" that is "untrue, deceptive or misleading," and that the plaintiff has sustained a pecuniary loss as a result of the "assertion, representation or statement of fact." Wis. Stat. § 100.18(1); *see also* Wis JI—Civil 2418.

¶ 40. As we have noted, the plaintiffs' case is premised primarily on the allegation that Harley failed to disclose the alleged motorcycle engine defect. A nondisclosure is not an "assertion, representation or statement of fact" under Wis. Stat. § 100.18(1).

169

Silence—an omission to speak—is insufficient to support a claim under Wis. Stat. § 100.18(1). The DTPA does not purport to impose a duty to disclose, but, rather, prohibits only affirmative assertions, representations, or statements of fact that are false, deceptive, or misleading.[4] To permit a nondisclosure to qualify as

---

[4] Our research has identified no appellate decision in which a claim under the DTPA was allowed to go forward on the basis of anything other than an affirmative statement or representation. For example, in *Tim Torres Enterprises v. Linscott,* 142 Wis. 2d 56, 416 N.W.2d 670 (Ct. App. 1987), the court of appeals upheld a verdict under Wis. Stat. § 100.18(1) where a retailer had deceptively represented in signs and a flier that his establishment was the only place a certain frozen custard was available. *Id.* at 68–69. Similarly, in *Grube v. Daun,* 173 Wis. 2d 30, 496 N.W.2d 106 (Ct. App. 1992), the court of appeals reinstated a claim under the statute premised on a real estate broker's "affirmative representations" that the seller had no knowledge of defects in the property. *Id.* at 59. These cases are representative only; we have discovered no case upholding a DTPA claim premised on a nondisclosure. The dissent reads *Grube* as supporting a conclusion that nondisclosures or omissions are actionable under the DTPA. The dissent's reasoning is as follows: the case involved several common law misrepresentation claims and a DTPA claim, premised upon a course of conduct that included both affirmative misrepresentations and nondisclosures. Dissent, ¶ 37 n.52. Therefore, according to the dissent, the court of appeals "apparently" used the term "misrepresentation" interchangeably in its opinion to refer to both affirmative misrepresentations and nondisclosures, in connection with the common law claims *and* the DTPA claim. *Id.* This is not a sound argument from precedent. In its discussion of the plaintiffs' DTPA claim, the court of appeals in *Grube* never referenced nondisclosures or omissions, but, rather, used the term "representations" or "misrepresentations." *Id.* at 57–59. The court specifically referred to nondisclosures elsewhere in its opinion when it analyzed the plaintiffs' common law claims. Certainly if the court of appeals in *Grube* was affirmatively

an actionable "assertion, representation or statement of fact" under Wis. Stat. § 100.18(1) would expand the statute far beyond its terms.

¶ 41. To the extent that the amended complaint alleges any affirmative assertions, they are mere commercial "puffery" and hence legally insufficient to support a claim under the statute. Puffery has been defined as "the exaggerations reasonably to be expected of a seller as to the degree of quality of his product, the truth or falsity of which cannot be precisely determined." *State v. American TV*, 146 Wis. 2d 292, 301–02, 430 N.W.2d 709 (1988) (quoting *Better Living, Inc. et al.*, 54 F.T.C. 648, 653 (1957), aff'd., 259 F.2d 271 (3d Cir. 1958)). *See also Loula v. Snap-On Tools Corp.*, 175 Wis. 2d 50, 54, 498 N.W.2d 866 (Ct. App. 1993) (statement that a tool dealer would make as much money as a doctor or lawyer was an exaggeration, "the truth or falsity of which cannot be precisely determined," and "so vague and indefinite that it amounts to nothing more than mere puffery," nonactionable at common law as a misrepresentation.)

¶ 42. In *American TV*, we held that "[a] general statement that one's products are best is not actionable as a misrepresentation of fact" and could not support a claim under Wis. Stat. § 100.18. *American TV*, 146 Wis. 2d at 302. We also concluded that the characterization of a product as "the finest" and a sale as a "clearance" or "closeout" were "merely examples of hyperbole and puffery," insufficient to state a claim under the DTPA. *Id.* at 299.

---

holding that a DTPA claim was actionable based upon nondisclosures or omissions, it would have said so explicitly.

¶ 43. Similarly here, the affirmative statements identified in the amended complaint constitute fairly obvious examples of puffery. Harley is alleged to have advertised the TC-88 as "a masterpiece," of "premium quality," and "filled to the brim with torque and ready to take you thundering down the road."

¶ 44. "Premium quality" equates to "the best," and is squarely within the puffery definition of *American TV.* The term "masterpiece" is arguably more precise than "the best," insofar as it connotes a specific engineering achievement, but this does not move the term out of the domain of puffery. One reason for excluding commercial puffs from the scope of actionable misrepresentations is that they are "not capable of being substantiated or refuted," *id.* at 302 (quoting *Sterling Drug, Inc.,* 102 F.T.C. 395, 752 (1983)), and a factfinder would have as little hope of determining whether the TC-88 was indeed "a masterpiece" as it would of determining whether it was simply "the best." Harley's statement that the TC-88 is "filled to the brim with torque and ready to take you thundering down the road" lacks even the minimal linguistic specificity required to make it amenable to proof or refutation, however entertaining the attempt might prove to be.

¶ 45. Accordingly, because a nondisclosure is not an "assertion, representation or statement of fact" for purposes of the DTPA, and because the only affirmative assertions alleged in the amended complaint are mere puffery, the plaintiffs have failed to state a claim under Wis. Stat. § 100.18.

*By the Court.*— The decision of the Court of Appeals is reversed.

¶ 46. ANN WALSH BRADLEY, J., withdrew from participation.

¶ 47. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). Because I conclude that the majority opinion has gone too far in expanding the scope of the economic loss rule and the puffery doctrine, I dissent.

¶ 48. This case comes to us on a motion to dismiss a complaint. The plaintiffs in this case seek relief on two grounds. First, the plaintiffs assert a common-law fraudulent misrepresentation and concealment claim against Harley-Davidson, contending that Harley-Davidson knew about and failed to disclose a defect in the cam bearing mechanism of certain motorcycles it sold. The majority opinion dismisses this claim under the economic loss doctrine, arguing that the plaintiffs are not entitled to pursue tort recovery for purely economic losses arising out of their contractual relationship with Harley-Davidson.[1]

¶ 49. Second, the plaintiffs assert that Harley-Davidson violated Wisconsin's Deceptive Trade Practices Act (DTPA), Wis. Stat. § 100.18(1), when it intentionally and falsely represented that motorcycles equipped with the faulty mechanism were of a particular standard of quality and suitable for safe, long-distance use. The majority opinion dismisses the second claim on two theories: (1) that a nondisclosure, as opposed to an affirmative assertion, is insufficient to support a claim under Wis. Stat. § 100.18(1);[2] and (2) that the affirmative assertions are commercial puffery, legally insufficient to support a claim under the statute.[3]

---

[1] Majority op., ¶ 20. The economic loss doctrine does not apply to Wis. Stat. § 100.18 claims. *Kailin v. Armstrong,* 2002 WI App 70, ¶¶ 2, 42, 43, 252 Wis. 2d 676, 643 N.W.2d 132.

[2] Majority op., ¶ 40.

[3] *Id.,* ¶ 43.

¶ 50.　The majority opinion falters in denying both claims. As to the common law intentional misrepresentation claim, the majority opinion pushes the economic loss rule beyond reasonable limits. As to the statutory claim, the majority opinion crafts a meaningless distinction between affirmative assertions and nondisclosures and undermines the purpose of Wis. Stat. § 100.18(1) by treating Harley-Davidson's representations as puffery. I discuss each of these problems with the majority opinion in turn.

I

¶ 51.　As to the common law intentional misrepresentation claim, sometimes referred to herein as fraud, the majority opinion delivers good news to the plaintiffs, but ultimately delivers more bad news than good.

¶ 52.　After ten paragraphs of bad news dicta describing why this case is a no-injury case and explaining that diminished value premised upon a mere possibility of future product failure is too speculative and uncertain to support an intentional misrepresentation claim,[4] the majority opinion gives the plaintiffs some good news:　the amended complaint is sufficient to state a more particularized allegation of damage.[5]

¶ 53.　Then comes the ultimate bad news. The economic loss rule bars the plaintiffs' common law intentional misrepresentation claim.[6]

---

[4] *Id.*, ¶¶ 12–21.

[5] *Id.*, ¶ 22. The plaintiffs' brief explains at great length the difference between no-injury cases involving a malfunctioning product and fraud claims seeking benefit of the bargain damages.

[6] Harley-Davidson raised the economic loss issue for the first time in its petition for review to this court. The general

¶ 54. In reaching this result, however, the majority opinion seeks to avoid determining the nature of a fraud in the inducement exception to the economic loss rule applicable in Wisconsin. It states that "[t]his case does not present an opportunity to determine whether a *Huron Tool*-type cause of action as an exception to the economic loss doctrine would be recognized by a majority of this court."[7]

¶ 55. The majority opinion asserts that it is irrelevant to determine the existence or scope of a fraud in the inducement exception because even adopting the "interwoven with" *Huron Tool*[8] fraud in the inducement test, "[t]he fraud alleged here plainly pertains to the character and quality of the goods that are the subject matter of the contract."[9] "In other words," asserts the majority opinion, "we see no reason to recognize an exception to the economic loss doctrine to allow this consumer contract dispute to be remedied as an intentional misrepresentation tort."[10]

¶ 56. I disagree with the majority opinion that this issue can be avoided. The plaintiffs in this case argue that the alleged intentional misrepresentation occurred prior to entering into their purchase of the

rule in this state is that matters not raised in the circuit court are deemed waived on appeal. *State v. Holland Plastics Co.,* 111 Wis. 2d 497, 504, 331 N.W.2d 320 (1983). This rule is one of administration, however, and this court may nevertheless consider issues not raised below on appeal as a matter of right. *Brown County v. Dep't of Health & Social Servs.,* 103 Wis. 2d 37, 42, 307 N.W.2d 247 (1981).

[7] Majority op., ¶ 35

[8] *Huron Tool & Eng'g Co. v. Precision Consulting Servs.,* 532 N.W.2d 541, 546 (Mich. Ct. App. 1995).

[9] *Id.,* ¶ 35.

[10] *Id.,* ¶ 37.

motorcycles. This type of fact situation was one explicitly contemplated by the lead opinion in *Digicorp* to provide an exception to the economic loss rule.[11] I conclude that resolving the breadth of the fraud in the inducement exception to the economic loss rule is an essential aspect of this case. I therefore proceed to consider the scope of the exception. A brief historical review of the development of the fraud exception will assist in this endeavor.

¶ 57. Courts have taken three different approaches in determining the scope of a fraud in the inducement exception to the economic loss rule. In some jurisdictions, no exception is recognized, at least in the context of U.C.C. claims, to the economic loss rule at all.[12] At least one justice of this court has favored this approach.[13]

---

[11] *Digicorp, Inc. v. Ameritech Corp.,* 2003 WI 54, ¶ 52, 262 Wis. 2d 32, 662 N.W.2d 652.

[12] *See Flagg Energy Dev. Corp. v. General Motors Corp.,* 709 A.2d 1075, 1088 (Conn. 1998) (a plaintiff's claim of fraudulent inducement to purchase a defective product procured under the U.C.C. was invalid on the ground that such a claim was inconsistent with the exclusive remedies provided by the U.C.C.). Others conclude that the U.C.C. does not restrict a party from pursuing fraud and misrepresentation claims arising out of a dispute over the sale of goods. *See* Steven C. Tourek et al., *Bucking the "Trend": The Uniform Commercial Code, the Economic Loss Doctrine, and Common Law Causes of Action for Fraud and Misrepresentation,* 84 Iowa L. Rev. 875, 878–84, 918 (1999).

[13] *Digicorp, Inc. v. Ameritech Corp.,* 2003 WI 54, ¶ 76, 262 Wis. 2d 32, 662 N.W.2d 652 (Sykes, J., concurring in part, dissenting in part).

176

¶ 58. In contrast, many courts "recognize that fraud [in the inducement of a contract] can be an exception to the economic loss rule."[14] The theory behind a fraud in the inducement exception to the economic loss rule is that contracts entered into under false pretenses cannot promote the proper ordering of risks and responsibilities between parties. One court articulated this reasoning as follows:

> [C]ontract negotiations that begin with the assumption that the other party is lying will hardly encourage free and open bargaining. The specific duty encompassed by fraud in the inducement is the duty of the parties entering into the contract to speak honestly regarding negotiated terms. How can parties freely allocate risk if they cannot rely on the opposite party to speak truthfully during negotiations regarding the subject matter of the contract—if they cannot tell what is a lie and what is not?[15]

¶ 59. Relying on this analysis, a number of jurisdictions, such as California, Illinois, and Texas, have recognized a fraud in the inducement exception to the economic loss rule.[16] The Wisconsin Court of Appeals adopted such an exception in *Douglas-Hanson Co., Inc. v. BF Goodrich Co.*, 229 Wis. 2d 132, 138–39, 598

---

[14] R. Joseph Barton, *Drowning in a Sea of Contract: Application of the Economic Loss Rule to Fraud and Negligent Misrepresentation Claims*, 41 Wm. & Mary L. Rev. 1789, 1831 (2000).

[15] *Budgetel Inns, Inc. v. Micros Sys., Inc.*, 8 F. Supp. 2d 1137, 1148 (E.D. Wis. 1998)

[16] *See, e.g., Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998); *Khan v. Shiley Inc.*, 266 Cal. Rptr. 106, 112 (Cal. Ct. App. 1990); *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 452 (Ill. 1982).

N.W.2d 262 (Ct. App. 1999), holding that "the economic loss doctrine does not preclude a plaintiff's claim for intentional misrepresentation when the misrepresentation fraudulently induces a plaintiff to enter into the contract." According to the court of appeals, a fraud in the inducement exception to the economic loss rule is appropriate for a number of reasons. Intentional misrepresentations undermine the ability of parties to negotiate freely.[17] Sound public policy supports placing the burden of loss resulting from a misrepresentation on the seller, who caused the loss and is best situated to assess and allocate the risk, rather than upon the buyer.[18] Two justices of this court have favored this approach.[19] I agree with this approach.

¶ 60. A third category of jurisdictions, such as Michigan and Florida, have adopted a narrower fraud in the inducement exception, adopting the reasoning of the Michigan Court of Appeals in *Huron Tool & Engineering Co. v. Precision Consulting Services*, 532 N.W.2d 541 (Mich. Ct. App. 1995). Although the Michigan court recognized a fraud in the inducement exception to the economic loss rule, it added the additional caveat that a complainant may bring an intentional misrepresentation claim only if it is extraneous to the alleged breach of contract.[20] In other words, the intentional misrepresentation claim must be factually distin-

---

[17] *Douglas-Hanson Co., Inc. v. BF Goodrich Co.*, 229 Wis.2d 132, 144–45, 598 N.W.2d 262 (Ct. App. 1999).

[18] *Id.* at 145–46.

[19] Justices Bradley and Bablitch advocated the "broad" exception. *Digicorp*, 262 Wis. 2d 32, ¶ 86.

[20] *Huron Tool*, 532 N.W.2d at 546.

guishable from the contract; the misrepresentation cannot be interwoven or intertwined with the subject matter of the contract.[21]

¶ 61. The *Huron Tool* rule has resulted in conflicting views about what constitutes an intentional misrepresentation "extraneous to" or "interwoven with" a contract. Some courts have "taken the view that the issue is strictly temporal."[22] That is, if the intentional misrepresentation occurs prior to the execution of the contract, it is extraneous to the contract and excepted from the economic loss rule. Other courts have taken the view that the timing of the intentional misrepresentation is not as important as "a substantive comparison of the allegedly fraudulent statements against the contract's provisions."[23] Two justices of this court have advocated some version of the *Huron Tool* rule.[24]

¶ 62. The *Huron Tool* "extraneous to, interwoven with" test has proved to be nightmarish in its application. One commentator remarked that "application of the 'interwoven' test has been impossible. A Ouija board could just as accurately predict the results. The analysis is 'murky' and the approach has produced 'conflicting opinions, even within the same district courts of appeal.' Further, the 'interwoven' analysis is, in theory, 'so broad that it swallows the exception whole.' "[25] Another

---

[21] *Id.* at 545.

[22] Paul J. Schwiep, *Fraudulent Inducement Claims Should Always be Immune From Economic Loss Rule Attack,* Fla. B.J., Apr. 2001, at 22, 24.

[23] *Id.*

[24] *Digicorp,* 262 Wis. 2d 32, ¶ 21 (Crooks, J., and Prosser, J.).

[25] Schwiep, *supra* note 22, at 27. *See also Digicorp,* 262 Wis. 2d 32, ¶¶ 86–89 (Bradley, J., dissenting).

commentator opined that "the practical effect of the additional requirement [that the fraud be extraneous to the contract] has rendered the exception a nullity."[26]

¶ 63. As I have stated, each of these approaches to the fraud in the inducement exception has had an advocate in this court. In *Digicorp, Inc. v. Ameritech Corp.*, 2003 WI 54, 262 Wis. 2d 32, 662 N.W.2d 652,[27] three participating justices (JJ. Crooks, Prosser, and Sykes) rejected the *Douglas-Hanson* fraud in the inducement exception to the economic loss rule.[28] Four participating justices (JJ. Crooks, Prosser, Bablitch, and Bradley) agreed in *Digicorp* that some fraud in the inducement exception to the economic loss rule exists, but the four divided equally about what the fraud in the inducement exception entailed.[29]

---

[26] Barton, *supra* note 14, at 1808.

[27] Majority op., ¶ 31.

[28] *Digicorp, Inc. v. Ameritech Corp.*, 262 Wis. 2d 32, ¶ 5 n.2.

[29] *Id.*, ¶ 5 n.2.

Harley-Davidson contends that the *Digicorp* court held that where an alleged misrepresentation inducing a contract concerns the quality or characteristics of a product that is the subject matter of the contract, the economic loss rule bars any tort claim premised upon the misrepresentation. Harley-Davidson argues that this court adopted the rule set forth in *Huron Tool* that the economic loss doctrine bars tort claims for misrepresentation that are "interwoven" with the terms of the contract, but permits tort claims for a misrepresentation that induces a contract if the misrepresentation is unrelated to the express or implied terms of a contract. Harley-Davidson errs. As the majority opinion explains, "three of five justices participating [in *Digicorp*] (albeit different sets of three) rejected *both Douglas-Hanson* and *Huron Tool*." Majority op., ¶ 34.

A three-justice *Digicorp* majority decided that the facts of the case were insufficient to satisfy the *Huron Tool* exception.

¶ 64. I agree with the four justices of the *Digicorp* court holding that there should be a fraud in the inducement exception to the economic loss rule. I would conclude, as did Justices Bablitch and Bradley in *Digicorp,* that a fraud in the inducement exception as articulated by the court of appeals in *Douglas-Hanson* is a good rule. But either under the *Douglas-Hanson* rule or at least some version of the *Huron Tool* rule, I conclude that the plaintiffs in the present case should survive a motion to dismiss their complaint.

¶ 65. The plaintiffs allege that Harley-Davidson misrepresented the quality of the TC-88 engines prior to the plaintiffs' decision to purchase motorcycles containing the malfunctioning engines. They allege that Harley-Davidson knew that "all of the motorcycles with the TC-88s are defective and will prematurely fail." These allegations satisfy at least one formulation of the *Huron Tool* test set forth in the lead opinion in *Digicorp:* "[I]n order for the fraud in the inducement exception to apply, the misrepresentation would have [to have] occurred before the formation of the contract. In addition, to constitute . . . intentional misrepresentation, a plaintiff would have to prove the five elements set forth in the case law and in Wisconsin Civil Jury Instruction 2401."[30]

¶ 66. An understanding of the principles and rationales underlying the economic loss rule serves to clarify when the rule should be applied.[31] The economic loss rule's stated purposes are to maintain the distinc-

---

[30] *Digicorp,* 262 Wis. 2d 32, ¶ 52.

[31] *Northridge Co. v. W.R. Grace & Co.,* 162 Wis. 2d 918, 933, 471 N.W.2d 179 (1991) (the principles and policy distinguishing between tort and contract actions determine into which category a complainant's alleged injury fits).

tion between tort law and contract law,[32] to protect freedom of contract, and to encourage the party best situated to assess the risk of economic loss and to insure against, assume, or allocate the loss.[33] In my opinion, the majority opinion's failure to recognize the intentional misrepresentation claim in the present case undermines these purposes.[34]

---

[32] The boundary between contract and tort is often indistinct. "[W]hen parties to a contract are disputing, tort and contract overlap, making it difficult to draw a clear distinction between the two." *Brooks v. Hayes,* 133 Wis. 2d 228, 246, 395 N.W.2d 167 (1986) (citing treatises, articles and cases discussing the overlap between contract and tort law). *See also State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.,* 225 Wis. 2d 305, 318–19 (1999) (the boundary between tort and contract law has moved in the direction of protecting consumers). *See* Grant Gilmore, *The Death of Contract* (1974).

[33] For a discussion of the purposes of the economic loss rule, see *Daanen & Janssen, Inc. v. Cedarapids, Inc.,* 216 Wis. 2d 395, 400–09, 573 N.W.2d 842 (1998). For a fuller discussion of the reasons for the economic loss doctrine, see *All-Tech Telecom, Inc. v. Amway Corp.,* 174 F.3d 862, 865–67 (7th Cir. 1999); Barton, *supra* note 14, at 1796–1800.

[34] For a discussion that barring intentional misrepresentation claims under the economic loss rule undermines the purposes of the rule, see *Digicorp,* 262 Wis. 2d 32, ¶¶ 89–92 (Bradley, J., dissenting).

Fraud is a special circumstance not within the purpose of the economic loss doctrine. The economic loss doctrine developed because of "concern about extending liability ad infinitum for the consequences of a *negligent* act." Robert L. Rabin, *Tort Recovery for Negligently Inflicted Economic Loss: A Reassessment,* 37 Stan. L. Rev. 1513, 1526 (1985) (emphasis added). *See, e.g., Ollerman v. O'Rourke Co., Inc.,* 94 Wis. 2d 17, 48–51, 288 N.W.2d 95 (1980) (courts are reluctant to impose liability in negligence actions for misrepresentation causing pecuniary loss not resulting from bodily harm or physical damage to property,

¶ 67. These purposes undergirding the economic loss rule evolved in the context of commercial transactions in which parties contracted for goods at arm's length. Such circumstances are distinct from situations in which consumers who are not engaged in business enter into contracts for goods.[35]

¶ 68. Adapting the economic loss rule to consumer transactions requires an evaluation of the economic loss rule and its underpinnings in light of the facts of a particular situation. While this court has recognized that the economic loss rule can apply to consumer transactions,[36] it is not clear that it should apply to fraud in the inducement claims involving consumer transactions. I conclude that the allegation of intentional misrepresentations in the case at bar is, at the very least, sufficient to withstand a motion to dismiss for failing to state a claim.

¶ 69. Allowing a fraud in the inducement exception to the economic loss rule for intentional false statements made prior to a contract in a consumer purchase preserves a distinction between tort law and

because defendants are exposed to wide liability); *Daanen & Janssen*, 216 Wis. 2d at 400 (the "economic loss doctrine is a judicially created doctrine providing that a commercial purchaser of a product cannot recover from a manufacturer, under the tort theories of negligence or strict products liability, damages that are solely 'economic' in nature.").

[35] *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 866 (7th Cir. 1999).

[36] *State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 225 Wis. 2d 305, 311–12, 592 N.W.2d 201 (1999) (holding "that the economic loss doctrine applies to consumer transactions and bars State Farm's tort claims for purely economic loss.").

contract law and fosters the values of each.[37] It maintains the value of contract by ensuring that consumers are in a position to make intelligent decisions in allocating the risk of loss, thereby increasing the likelihood that losses can be resolved in contract. It furthers the purposes of tort law by sustaining a financial deterrent for those who intentionally misrepresent their goods.

¶ 70. A fraud in the inducement exception to the economic loss rule for intentional false statements made to consumers is founded on the tort of intentional misrepresentation, a tort action protecting intangible economic interests. This tort action is separate and distinct from the duty created solely by contract.[38] "[T]he interest protected by fraud is a plaintiff's right to justifiably rely on the truth of a defendant's factual representation in a situation where an intentional lie would result in loss to the plaintiff."[39] An overextension

[37] For a court adopting an intentional misrepresentation exception to the economic loss rule, see *Moorman Mfg. Co. v. Nat'l Tank Co.,* 435 N.E.2d 443, 452 (Ill. 1982).

For a discussion of the desirability of allowing recovery in intentional misrepresentation versus contract, see Barton, *supra* note 14, at 1825–29 (contract and tort claims are fundamentally different and serve complementary but distinct purposes; these differences should inform the correct application of the economic loss rule to misrepresentation).

[38] The five elements of intentional misrepresentation (fraud) are: (1) the defendant made a misrepresentation of fact; (2) the representation was untrue; (3) the defendant knew the representation was untrue or made it recklessly; (4) the representation was made with intent to deceive and induce the plaintiff to act upon it to the plaintiff's pecuniary damage; and (5) the plaintiff believed the representation to be true and relied on it. Wis JI—Civil 2401 (2002).

[39] *Woodson v. Martin,* 663 So. 2d 1327, 1330 (Fla. 1995) (Altenbernd, J., dissenting).

of the economic loss rule drowns fraudulent misrepresentation claims in a sea of contract.[40]

¶ 71. What kind of "freedom of contract" and "ability to assess and insure against the risk" is being fostered or protected when a party to a contract commits an intentional tort in inducing a contract that causes monetary loss to another party? On what basis can we say that an individual consumer does not need the tort remedy of intentional misrepresentation against a manufacturer?[41] The answer to both questions is none.[42]

¶ 72. These questions are never addressed by the majority opinion, however, because it simply asserts that the economic loss doctrine bars this intentional misrepresentation tort because there is a remedy for the plaintiffs in contract.

[40] *See* Barton, *supra* note 14, at 1843 (2000).

In *East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 866 (1986), the United States Supreme Court used the sea/drowning metaphor as follows: "It is clear, however, that if this development [of products liability] were allowed to progress too far, contract law would drown in a sea of tort."

[41] *See, e.g., Thompson v. Neb. Mobile Homes Corp.,* 647 P.2d 334, 337 (Mont. 1982) (voicing skepticism of ability of warranty law to protect the consumer).

[42] *See, e.g.,* Tourek et al., *supra* note 12 (economic loss rule should not be applied to bar common law fraud claims); Frank Nussbaum, *The Economic Loss Rule and Intentional Torts: A Shield or A Sword,* 8 St. Thomas L. Rev. 473, 504–05 (1996) (same).

¶ 73. The majority opinion announces an outcome today without announcing a rule of law. The scope of the fraud in the inducement exception to the economic loss rule remains for another day.[43]

¶ 74. Treating the complaint's allegations as true, as we must do in a motion to dismiss, I conclude that the plaintiffs have stated a claim for fraud in the inducement of the contract, whether under *Huron Tool* or *Douglas-Hanson*. Whether the plaintiffs ultimately prevail in their claim is a question to be determined at trial, not on a motion to dismiss.

## II

¶ 75. I am also unpersuaded by the majority opinion's conclusion that the plaintiffs in this case are not entitled to proceed with their claim under Wis. Stat. § 100.18(1), the Deceptive Trade Practices Act (DTPA), on the following theories: (A) The plaintiffs' case is premised primarily on the allegation that Harley-Davidson failed to disclose the alleged motorcycle defect[44] and the DTPA prohibits only untrue, deceptive, or misleading affirmative assertions rather than omissions; and (B) any affirmative assertions are puffery and not actionable.[45]

¶ 76. I discuss each of these issues in turn.

---

[43] As Judge Posner has written, the economic loss doctrine does not imply abolition of the fraud tort in all cases in which the plaintiff and the defendant have business relations. Indeed for Judge Posner the application of economic loss to such cases poses a close question. *All-Tech Telecom, Inc. v. Amway Corp.,* 174 F.3d 862, 867 (7th Cir. 1999). The Seventh Circuit Court of Appeals declined to predict how this court would answer this question given that it is such a close call.

[44] Majority op., ¶ 40.

[45] *Id.,* ¶ 41.

## A

¶ 77. The allegation that Harley-Davidson failed to disclose certain defects is only one aspect of the plaintiffs' allegations, and "the nondisclosure" cannot be viewed in isolation. The advertising material has to be read as a whole to determine whether any assertion, representation, or statement of fact is untrue, deceptive, or misleading under the statute.[46]

¶ 78. The plaintiffs' cause of action under Wis. Stat. § 100.18(1) also alleges that Harley-Davidson made deceptive affirmative statements that motorcycles equipped with TC-88 engines were of a particular standard or quality. The plaintiffs also allege that Harley-Davidson knew or should reasonably have known that the motorcycles with TC-88 engines "were dangerously defective" and failed to advise or warn purchasers of an inherent, disabling defect rendering the motorcycles unsafe and unsuitable for their intended and foreseeable use, including long-distance and highway riding.

¶ 79. Whether, at the motion to dismiss stage, the failure to disclose falls within the DTPA is a question of statutory interpretation, a question of law that this court decides independently of the circuit court or court of appeals, but benefiting from their analyses. In construing a statute, our goal is to discern and give effect to

---

[46] *Avis Rent A Car Sys., Inc. v. Hertz Corp.,* 782 F.2d 381, 385 (2d Cir. 1986) ("Thus, we have emphasized that in reviewing FTC actions prohibiting unfair advertising practices under the Federal Trade Commission Act a court must 'consider the advertisement in its entirety and not . . . engage in disputatious dissection. The entire mosaic should be viewed rather than each tile separately.' ") (quoting *FTC v. Sterling Drug, Inc.,* 317 F.2d 669, 674 (2d Cir. 1963).

the intent of the legislature.[47] In so doing, a court must ascertain the legislative intent from the language of the statute in relation to its context, history, scope, and objective, including the consequences of alternative interpretations.[48]

¶ 80. Wisconsin Stat. § 100.18(1) protects consumers from untrue, deceptive, or misleading advertisements, announcements, statements or representations. The statute proscribes an "advertisement, announcement, statement or representation contain[ing] any assertion, representation or statement of fact which is untrue, deceptive or misleading."[49]

---

[47] *State v. Cole,* 2003 WI 59, ¶ 13, 262 Wis. 2d 167, 663 N.W.2d 700 (citing *State v. Szulczewski,* 216 Wis. 2d 495, 504, 574 N.W.2d 660 (1998)).

[48] *See Cole,* 262 Wis. 2d 167, ¶ 13 (citing *State v. Davis,* 2001 WI 136, ¶ 13, 248 Wis. 2d 986, 637 N.W.2d 62).

[49] In full, Wis. Stat. § 100.18(1) provides that:

No person, firm, corporation or association, or agent or employee thereof, with intent to sell, distribute, increase the consumption of or in any wise dispose of any real estate, merchandise, securities, employment, service, or anything offered by such person, firm, corporation or association, or agent or employee thereof, directly or indirectly, to the public for sale, hire, use or other distribution, or with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase, sale, hire, use or lease of any real estate, merchandise, securities, employment or service, shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper, magazine or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet, letter, sign, placard, card, label, or over any radio or television station, or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public relating to such purchase, sale, hire, use or lease of such real estate, merchandise, securities, service or employment or to the terms or conditions thereof, which advertisement, announce-

¶ 81. The language of the statute is broad in scope, affecting numerous entities, products, services, and means of communication. Wisconsin courts have consistently held that the language of Wis. Stat. § 100.18 serves a remedial purpose, going further than the common law in providing a cause of action to consumers who have been deceived or mislead.[50]

¶ 82. The history of the statute supports the view that its broad language serves the purpose of consumer protection. In reviewing the evolution of the statute, this court has previously concluded that since its enactment, the legislature has expanded the reach of Wis. Stat. § 100.18 to afford consumers new protections to

---

ment, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

[50] *See Tim Torres Enters., Inc. v. Linscott,* 142 Wis. 2d 56, 72, 416 N.W.2d 670 (Ct. App. 1987) ("The broad remedial scope of sec. 100.18 and its protective purpose make it similar to the remedial provisions of the federal antitrust laws in that to eliminate or rectify a wrong the traditional standards of proof may be relaxed if necessary."); *Dorr v. Sacred Heart Hosp.,* 228 Wis. 2d 425, 445, 597 N.W.2d 462 (Ct. App. 1999) ("Section 100.18 prohibits deceptive, misleading, or untrue statements of any kind to the public made in a commercial setting, no matter how made."); *Kailin,* 252 Wis. 2d 676, ¶ 42 ("[W]e reject the premise . . . that Wis. Stat. § 100.18 does not create a new cause of action, but simply provides a remedy for common law claims . . . .").

The elements of the cause of action under § 100.18 differ from those of the common law claims of intentional misrepresentation, strict liability misrepresentation and negligent misrepresentation. *Kailin,* 252 Wis. 2d 676, ¶ 40.

keep pace with increasingly sophisticated methods of disseminating information.[51]

¶ 83. The majority opinion simply concludes, without reasoning or authority, that a nondisclosure is not "an assertion, representation or statement of fact" under Wis. Stat. § 100.18(1).[52] Neither the language of the statute nor the case law excludes misrepresenta-

[51] *State v. Automatic Merchandisers of Am., Inc.,* 64 Wis. 2d 659, 662–63, 221 N.W.2d 683 (1974). *See also Bonn v. Haubrich,* 123 Wis. 2d 168, 173–74, 366 N.W.2d 503 (Ct. App. 1985).

One commentator has written that "Wisconsin's statutory misrepresentation law . . . was enacted to address the shortcomings of common law protections for consumers. . . . The evils the legislature was attempting to remedy [in § 100.18] were not just overt deception but also implicit deception such as advertising that has the tendency to mislead consumers, intentionally or not." Cullen Goretzke, *The Resurgence of Caveat Emptor: Puffery Undermines the Pro-Consumer Trend in Wisconsin's Misrepresentation Doctrine,* 2003 Wis. L. Rev. 171, 222.

[52] Majority op., ¶ 40. The case law interpreting Wis. Stat. § 100.18 does not, as the majority opinion claims at note 4, point toward the inexorable conclusion that nondisclosures are not actionable under the statute. Although the cases reported involved affirmative assertions, the lack of litigation on this subject is not dispositive. In fact, *Grube v. Daun,* 173 Wis. 2d 30, 496 N.W.2d 106 (Ct. App. 1987), a case cited by the majority opinion as allowing only a claim under § 100.18 based on affirmative misrepresentations, does not stand for this proposition.

In *Grube,* the plaintiffs brought actions for "negligence, intentional misrepresentation, strict responsibility for misrepresentation, negligent misrepresentation and violation of sec. 100.18" against the defendants for making certain affirmative assertions regarding the suitability of the property for business and family purposes and for failing to disclose the existence of an underground gasoline tank that was later discovered to be causing groundwater contamination.

tions through nondisclosures made in the course of a consumer transaction in which representations have been made.

¶ 84. In the present case, Harley-Davidson made various claims about the quality of its product, clearly implying that its engine would not be subject to sudden and complete mechanical failure. The plaintiffs' complaint alleges that Harley-Davidson "advertised and marketed the motorcycles equipped with TC-88 engines as premium quality motorcycles that were safe and appropriate for their intended and foreseeable use, including long-distance and highway riding." The plaintiffs further allege that the motorcycles are not, in fact, safe and appropriate for such uses because the defect in the cam bearing may leave riders stranded or cause them to be injured.

¶ 85. The Wisconsin Civil Jury Instructions explain that an assertion is "untrue if it is false, errone-

---

The court of appeals in *Grube* addressed the difference between an affirmative assertion and a nondisclosure in the context of the common law misrepresentation claims and not with respect to Wis. Stat. § 100.18. With respect to the common law fraud claims, the court of appeals concluded that "the Grubes' complaint alleges facts to support claims of misrepresentation . . . both affirmatively and through nondisclosure." *Grube,* 173 Wis. 2d at 56.

The plaintiffs in *Grube* premised their Wis. Stat. § 100.18 claim in significant part on defendant Thiel's silence in response to the plaintiff's questions. Plaintiff Grube's Brief at 19; Respondent Thiel's Brief and Appendix at 4–5. The court of appeals allowed the § 100.18 claim to proceed, stating that "the misrepresentations . . . alleged in the Grubes' complaint, if proven, are 'deceptive advertising' " within the scope of sec. 100.18." *Grube,* 173 Wis. 2d at 57. The court of appeals apparently used "misrepresentation" in its opinion to refer to both affirmative and nondisclosure misrepresentation.

ous, or does not state or represent things as they are."[53] An assertion is "deceptive or misleading if it causes a reader or listener to believe something other than what is in fact true or leads to a wrong belief."[54] The law is clear that an advertisement is deceptive or misleading not only by false affirmative assertions but by assertions, representations, and statements of fact that fail to disclose the whole truth or that omit important facts and thus, give misleading impressions.[55]

¶ 86. If a seller speaks, its words must be sufficient so as not to be misleading. "[H]alf of the truth may obviously amount to a lie, if it is understood to be the whole."[56] In other words, the allegation is that Harley-Davidson affirmatively asserted that the engine was a "masterpiece," implying that it had no inherent defect subjecting it to failure.

¶ 87. The Federal Trade Commission, upon which this court has relied in the past,[57] has recognized that while an advertisement may make assertions that are literally true, it "may be deceptive where the overall impression communicated is misleading."[58]

---

[53] Wis. JI—Civil 2418 (2002).

[54] *Id.*

[55] *Perona v. Volkswagen of Am., Inc.,* 684 N.E.2d 859, 866 (Ill. Ct. App. 1997) (failure to disclose sudden acceleration problem in vehicle sufficient to support fraud under consumer protection act).

[56] Dan B. Dobbs, *Prosser and Keeton on the Law of Torts* § 106 at 738. (5th ed. 1984).

[57] *See State v. Am. T.V. & Appliance of Madison, Inc.,* 146 Wis. 2d 292, 301–02, 430 N.W.2d 709 (1988).

[58] *See* Ivan L. Preston, *The Federal Trade Commission's Identification of Implications as Constituting Deceptive Advertising,* 57 U. Cinn. L. Rev. 1243, 1247 (1989).

¶ 88. Even in the context of common-law misrepresentation claims, this court recognized over twenty years ago that the distinction between an affirmative assertion and a nondisclosure has been consistently undermined by sensible public policy exceptions. As the court stated in *Ollerman v. O'Rourke Co., Inc.,* 94 Wis. 2d 17, 288 N.W.2d 95 (1980), courts have moved in their common-law interpretation of duty from "no duty to disclose" to holding sellers who actively conceal a defect or tell half-truths liable for misrepresentation.[59]

¶ 89. The actionable words of Wis. Stat. § 100.18, "assertion, representation or statement of fact," should be read in the context of the statute as a whole and consistently with the legislature's goal of inhibiting a broad range of deceptive or misleading business communications. Material omissions should not be excluded from the statute's reach when omissions make the assertions or representations about the merits of a product deceptive, misleading, or untrue. The majority opinion limits the statute far beyond its words or the legislature's intent.

¶ 90. The legislature adopted Wis. Stat. § 100.18 as the public policy of this state. The legislature did not create an artificial distinction between a deceptive or misleading assertion, representation, or statement of fact and an assertion, representation, or statement of fact that is deceptive or misleading because it is a partial truth. This court should not do so in the legislature's stead.

---

[59] *Ollerman v. O'Rourke Co., Inc.,* 94 Wis. 2d 17, 30–31, 288 N.W.2d 95 (1980).

B

¶ 91. The majority opinion dismisses the allegations of deceptive advertising, labeling them as puffery.

¶ 92. We look first at the allegations of the complaint, which are to be liberally construed with all reasonable inferences drawn in favor of the plaintiffs.[60] The complaint asserts that Harley-Davidson deceptively advertised the TC-88 engines and motorcycles as being equipped with safe, premium quality engines that were reliable and appropriate for long-distance and highway use. More specifically, the complaint includes affirmative assertions made by Harley-Davidson with respect to the performance of the affected motorcycles and the research, development, and testing of those motorcycle engines that induced the plaintiffs to purchase their motorcycles.

¶ 93. The plaintiffs in the present case allege that Harley-Davidson made three representations that misled them and induced them to purchase defective motorcycles. Those alleged representations are as follows:

> (1) Harley-Davidson's marketing literature described the development of the TC-88 engine in the following manner:

---

[60] *Scarpaci v. Milwaukee County,* 96 Wis.2d 663, 669, 292 N.W.2d 816 (1980) ("The purpose of the complaint is to give notice of the nature of the claim; and therefore, it is not necessary for the plaintiff to set out in the complaint all the facts which must eventually be proved to recover. The purpose of a motion to dismiss for failure to state a claim is the same as the purpose of the old demurrer to test the legal sufficiency of the claim. Because the pleadings are to be liberally construed, a claim should be dismissed as legally insufficient only if 'it is quite clear that under no conditions can the plaintiff recover.' ") (citations omitted).

194

Developing [the TC-88s] was a six-year process . . . .
The result is a masterpiece. We studied everything from
the way oil moves through the inside, to the way a
rocker cover does its job of staying oil-tight. Only 21
functional parts carry over in the new design. What
does carry over is the power of a Harley-Davidson®
engine, only more so.

(2) Harley-Davidson described the TC-88 engine as
"[e]ighty-eight cubic inches filled to the brim with
torque and ready to take you thundering down the
road"; and

(3) Harley-Davidson "advertised and marketed the
motorcycles equipped with TC-88 engines as premium
quality motorcycles that were safe and appropriate for
their intended and foreseeable use, including long-
distance and highway riding."

¶ 94. The majority opinion dismisses the plain-
tiffs' complaint because it contends that words and
phrases like "masterpiece," "premium quality," and
"filled to the brim with torque and ready to take you
thundering down the road" are too vague and indefinite
to be verified.[61]

¶ 95. The majority opinion takes the words "mas-
terpiece" and "premium quality" out of the context of
the marketing and advertising literature, which made a
number of representations, the truth of which are
capable of being verified. Specifically, the length of
testing ("six-year process"), the extent of testing ("stud-
ied everything"), the number of carryover parts ("21"),
and the power equivalence with prior models are all
facts that can be verified. That Harley-Davidson re-
ferred to all of these achievements as culminating in a
"masterpiece" of "premium quality" suggests that all of

[61] Majority op., ¶ 44.

195

the research and testing produced an extremely high quality product and clearly implies that this is not an engine that would be subject to sudden and complete mechanical failure.

¶ 96. The majority opinion, with little analysis or authority, dismisses all of these statements as puffery. I conclude that Harley-Davidson's statements, read as a whole, were not puffery and are sufficient to support a claim under Wis. Stat. § 100.18.

¶ 97. "Puffery" refers broadly to nonfactual representations such as statements of opinion or value.[62] The court has defined "puffing ... [as] a term frequently used to denote the exaggerations reasonably to be expected of a seller as to the degree of quality of his product, the truth or falsity of which cannot be precisely determined."[63]

¶ 98. Puffery has "long [been] considered an acceptable advertising technique,"[64] and cases hold that a consumer cannot rest a claim for misrepresentation on puffery because no reasonable person would rely on such representations.[65]

¶ 99. The distinction between a statement of fact, a statement of opinion, and puffery is often faint,

---

[62] Goretzke, *supra* note 51, at 171.

[63] *Am. T.V. & Appliance,* 146 Wis. 2d at 301–02.

[64] *Id.* at 301.

[65] Contemporary research suggests that the legal conclusion that a reasonable person does not rely on seller's statements of opinion or quality does not reflect reality. Studies suggest that consumers do not necessarily distinguish between statements of fact and statements describing quality. Goretzke, *supra* note 51, at 173–74 (discussing the fact that subjects treated the statement that a car gets "27 miles per gallon on regular gas" and the opinion that a car gets "truly excellent gas mileage" as equivalents).

196

uncertain, and not easily drawn.[66] Puffery is a form of a statement of opinion and opinions and facts drift into each other. Thus the distinction among the three has been hard to apply and has produced inconsistent case law.[67] The distinction has also been viewed as a question for the trier of fact, not one of law for the court, thus providing another reason for not dismissing the complaint on a motion to dismiss.[68]

---

[66] *Miranovitz v. Gee,* 163 Wis. 246, 255, 157 N.W. 790 (1916) ("The attempt to base a distinction upon the difference between an 'opinion' and a 'fact' has resulted in much confusion; representations in one case being held to be matters of opinion and representations in another case of exactly the same character being held to be statements of fact. This distinction is oftentimes uncertain, indefinite, and unreal.").

Judge Learned Hand concluded that a supposed distinction between opinion and fact has not "escaped the criticism it deserves." Whether it is opinion or fact depends in part on the circumstances of the buyer and seller. *Vulcan Metals Co. v. Simmons Mfg. Co.,* 248 F. 853, 856 (2d Cir. 1918).

[67] For instance, in *Consolidated Papers, Inc. v. Dorr-Oliver, Inc.,* 153 Wis. 2d 589, 594, 451 N.W.2d 456 (Ct. App. 1989), the court of appeals held that a seller's claim that a liquid clarifier would have a "long equipment life" was puffery, but in *Radford v. J.J.B. Enterprises,* 163 Wis. 2d 534, 544–45, 472 N.W.2d 790 (Ct. App. 1991), the court of appeals held that representing a boat as having a "sound hull" was not.

In *Loula v. Snap-On Tools Corp.,* 175 Wis. 2d 50, 54, 498 N.W.2d 866 (Ct. App. 1993), claims that "a Snap-On dealership was a no-risk proposition" and that such dealers "make as much money as doctors and lawyers" were held to be puffery.

These decisions provide no sense of a clear boundary between what statements do or do not constitute puffery.

[68] *See, e.g., Miranovitz,* 163 Wis. at 253; *Lambert v. Hein,* 218 Wis. 2d 712, 724, n.4, 582 N.W.2d 84 (Ct. App. 1998).

197

¶ 100. A seller can be held liable not only for statements of fact but also statements of opinion.[69] I would therefore conclude that Harley-Davidson's statements of opinion regarding the quality of its product are not puffery, or at least present a jury question, and are actionable. This approach is consistent with a long line of Wisconsin case law.[70]

¶ 101. Harley-Davidson's advertising literature, coupled with Harley-Davidson's status as one of the premier motorcycle manufacturers in the world, confirms that its statements were not mere puffery. Harley-Davidson has built its reputation on producing high quality products for many years. This reputation would lead a reasonable person to believe that when Harley-Davidson claims it has built a "masterpiece," it has in fact built a motorcycle that does not have a material defect.

¶ 102. The majority opinion's dismissal of the statements as boastful posturing does a disservice to both Harley-Davidson and the consuming public that holds Harley-Davidson's products in such high esteem.

---

[69] Wisconsin has assigned liability for statements of opinion that are made by a person who does not believe the statements to be true. *See, e.g., Lundin v. Shimanski,* 124 Wis. 2d 175, 192, 368 N.W.2d 676 (1985) ("[S]tatements of opinion are actionable if the speaker knows of facts incompatible with his opinion."); *Hartwig v. Bitter,* 29 Wis. 2d 653, 658, 139 N.W.2d 644 (1966) ("It is clear, therefore, that if, at the time of the assertion, the utterer is aware of facts that are incompatible with his opinion . . . the fraud is *in praesenti*."); *Zingale v. Mills Novelty Co.,* 244 Wis. 144, 150, 11 N.W.2d 644 (1943) ("A statement of opinion in a business transaction upon facts not disclosed or otherwise known to the recipient may reasonably be interpreted as an implied statement that the maker knows of no fact incompatible with his opinion.").

[70] *See* cases cited at note 69, *supra.*

¶ 103. While the allegations in the complaint may or may not be borne out at trial, I conclude that if the majority opinion were treating all facts pleaded and all reasonable inferences drawn from those facts as true for the purpose of testing the legal sufficiency of the complaint, it would conclude that the plaintiffs have made assertions sufficient to support a cause of action under Wis. Stat. § 100.18.

¶ 104. For the reasons set forth, I dissent.